# Neff's Appeal.

*Republication of will by reference to it in codicil.*

A codicil will operate to revive or republish a will, and revoke another made before the codicil and after the will to which it is annexed, unless its effect to do so is negatived by the contents of the codicil itself.

APPEAL from the Register's Court of *Philadelphia*.

This was an appeal, by William P. Neff, Charles Neff, and John Neff, Jr., from the decision of the Register's Court in Philadelphia in relation to the will of their deceased father, John R. Neff.

The case was this:— John R. Neff, of Philadelphia, the owner of a large estate, real and personal, made a will, which bore date 22d April 1850. On the 14th of August 1857, he made another will.

This last will contained the following clause : "Hereby revoking all wills and testaments by me at any time heretofore made, and declaring these presents only to be and contain my last will and testament."

He subsequently wrote a codicil on the will of 1850, in these words :—

"On this the 10th day of October, A. D. 1857, for reasons growing out of recent occurrences, I hereby entirely revoke all the provisions of the foregoing will, so far as they relate to my sisters, Hannah Patterson and Rebecca Biggs, and the husband of the latter.

[Neff's Appeal.]

" Witness my hand and seal."

The codicil was properly signed, sealed, and witnessed.

The question in the case was, Had the codicil the effect of revoking the second will, and of reviving and republishing the will on which it was written ?

The register of wills admitted to probate the will of 1850, and rejected that of 1857,.and the Register's Court affirmed this decision ; which was the error assigned here.

*William A..Porter*, for appellant.—1. The will of 1850 disposes of the residue of the testator's estate thus ;—

" Item.—The rest (that is, all), residue and remainder of my estate, real, personal, and mixed, whatsoever, I give, devise, and bequeath to my sons, William P. Neff, Charles Neff, James P. W. Neff, John R. Neff, Jr., and any child or children that may be hereafter born, in equal shares, as tenants in common."

In the second will the name of the testator's son James is omitted. On that point this is all the record shows, and the difference between the two wills is thus manifest. It is true, however, in point of fact (as stated in the opinion of the court), that James died before the will of 1857 was executed, and that he died unmarried, and without issue. After his death, the testator, remembering that James was one of the residuary devisees and legatees mentioned in the will of 1850, wrote the will of 1857, intending to drop the name of James altogether.

If the will of 1850 is to stand, the devise and bequest of James's portion of the residue has lapsed: Sword *v.* Adams, 3 Yeates 34; Weishaupt *v.* Brehman, 5 Binn.. 115; Dickinson *v.* Purvis, 8 S. & R. 71; Newbold *v.* Prichett, 2 Wh. 46; Comfort *v.* Mather, 2 W. & S. 450.

The 12th section of the Act of 8th April 1833 contains an exception in the case of a devise or legacy in favour of a child or lineal descendant, if the devisee or legatee shall leave issue surviving the testator; and the 2d section of the Act of 6th May 1844 contains an exception in the case of a devise or legacy in favour of a brother or sister, or the children of a deceased brother or sister, where the testator leaves no lineal descendants. The general rule applies to the present case, and neither of the exceptions.

2. The question may hereafter arise, where his portion of it is to go, if it has lapsed ?

Mary Jane Williams, who is mentioned in both wills as the testator's granddaughter, was the only child of his daughter Jane, who married Mr. Williams, and after giving birth to this child died before either will was made. The granddaughter is not mentioned in the residuary clause in either will. The question may arise (if the will of 1850 be established), whether the portion of

the residuum devised to James shall descend to his brothers and to Mary Jane Williams as the representative of his sister Jane, or whether it shall go only to the other residuary devisees and legatees named in the will, namely, his brothers William, Charles, and John.

In England this was for many years a disputed question. The cases will be found collected in Mr. Jarman's chapter on the Doctrine of Lapse, 1 Jarm. 293*, and especially in Mr. Perkins's elaborate note on the same page (American ed. of 1859, vol. 1, p. 311). See also Bagwell v. Dry, 1 Peere Williams 700; Sloan v. Hanse, 2 Rawle 28; Scheiffelin v. Kessler, 5 Id. 115; Woolman's Estate, 3 Whart. 477; Patterson v. Swallow, 8 Wright 487; Ferguson v. Hedges, 1 Harrington 528; Haydon v. Staughton, 5 Pick. 528; Van Kleck v. The Church, 6 Paige 600.

It may be that, under these decisions, the lapsed share of James would pass to the other residuary legatees, and it may be that Mary Jane Williams, the granddaughter of the testator, would be prevented from claiming any portion of it by the terms employed respecting her in each will.

All controversy on these subjects would be ended by adopting the will of August 1857 as the will of the testator. It is executed according to law. It expressly revoked all other wills theretofore made, and consequently it revoked and annulled the will of 1850.

Was the will of 1850 revived and republished by the codicil of October 1857?

The old English decisions on this subject are very clearly and succinctly set forth in a note to Worthington on Wills, p. 567*. See Law Library, vol. 60, p. 266. These decisions led to the passage of the stat. of 1 Vict. chap. 26. The 22d section of that statute is as follows:—

"No will or codicil, or any part thereof, which shall be in any manner revoked, shall be revived otherwise than by the re-execution thereof, or by a codicil executed in manner hereinbefore required, and showing an intention to revive the same; and when any will or codicil which shall be partly revoked and afterwards wholly revoked, shall be revived, such revival shall not extend to so much thereof as shall have been revoked before the revocation of the whole thereof, unless an intention to the contrary shall be shown."

On turning to the decisions made in Pennsylvania, there are four cases which might mislead a casual reader of the law on this subject, viz.: Jones v. Heartly, 2 Whart. 103; Mullen v. McKelvy, 5 Watts 400; Campbell v. Jamison, 8 Barr 498, and Flintham v. Bradford, 10 Id. 85; for in each of these cases the will in question bore date previously to the Act of 1833, and was therefore governed by the old Act of 1705, as a will must

SUPREME COURT [*Philadelphia*

be determined by the law as it stood when the will was executed, and not as it stood at the death of the testator. All that is said in these cases relates to the law as it stood before 1833, and not since. Under the Act of 1705 a will might be republished by parol. But now neither the revocation nor the republication of a will can be proved by parol evidence: Jack *v.* Shoenberger, 10 Harris 416; Clarke *v.* Morrison, 1 Casey 453; Fransen's Will, 2 Id. 202.

As a general rule the same formalities are required in annulling a will as in making it originally: Hays *v.* Harden, 6 Barr 409; Wykoff's Appeal, 3 Harris 281; Heise *v.* Heise, 7 Casey 246. The question will however be found to turn on the Act of 8th April 1833, Purd. 1017, §§ 16, 17, which are as follows:—

"No will in writing concerning any real estate shall be repealed, nor shall any devise or direction therein be altered otherwise than by some other will or codicil in writing, or other writing declaring the same, executed and proved in the same manner as is hereinbefore provided, or by burning, cancelling, or obliterating, or destroying the same by the testator himself, or by some one in his presence, and by his express direction."

"No will in writing concerning any personal estate shall be repealed, nor shall any bequest or direction therein be altered, otherwise than as is hereinbefore provided in the case of real estate, except by a *nuncupative* will, made under the circumstances aforesaid, and also committed to writing in the lifetime of the testator, and after the writing thereof read to or by him, and allowed by him, and proved to be so done by two or more witnesses."

A codicil which is said to revive a will must have some reference to the provisions contained in the will. In other words, it must show some intention on the part of the testator that the instrument on which he writes the codicil shall be thereby revived, and another instrument thereby destroyed. How can this intention be shown under the decisions previously referred to, except by writing words which declare that intention in clear terms? This was the very point to which the Act of 1833 was directed.

*John B. Gest,* for M. J. Williams appellee.—The appellant errs in stating that the difference between the two wills made by testator respectively, in April 1850 and August 1857, exists only in the omission of the name of testator's son James, in the residuary clause of the latter. There is a material difference in them as to the provision made in each of them for Mary Jane Williams, testator's granddaughter.

There is also a difference in the formality of the execution of the wills. In making the first will and the codicil thereto, of

[Neff's Appeal.]

October 1857, he has taken the precaution to have subscribing witnesses, while there are none to the will of August 1857.

This last difference, though perhaps unimportant in point of law, is pertinent to the argument as to the testator's intention in making the codicil, because it shows that it was not a "scribble on the back of his will, made in a moment of leisure," but a solemn, deliberate act, in the presence of witnesses.

The case involves the consideration of two questions.

I. Did the codicil revive and republish the will of April 1850?

II. If so, does this republication revoke the will of August 1857?

The inquiry as to the subsequent effect of the provisions made in any of the items of the will finally established does not now arise. The effect of the lapsing of the devise to James is left, therefore, by the appellee.

First. We contend that the codicil of October 10th 1857, republishes the will of 1850; because,

1. It is properly made, as well as deliberately and formally executed, as a codicil to the will of 1850.

2. It is written under and refers to that will, as well by the express words "the foregoing will," as by revoking two legacies contained only therein.

3. It cannot be made to refer to any other will.

The decisions are full, and clear, and uniform, that such a codicil revives and republishes the will to which it refers, as to all parts not by it expressly revoked: Williams on Executors (ed. 1859), p. 184, and cases cited; Jarman on Wills (ed. 1859), p. 206 (175), and cases cited; Barnes v. Crowe, 1 Ves. Jr. 486; Rogers v. Pittis, 1 Addams 37–41; Marwood v. Turner, 3 P. Wms. 168; Jack v. Shoenberger, 10 Harris 419; Campbell v. Jamison, 8 Barr 500; Quincy v. Rogers, 9 Cush. 291; Bradley v. Gibbs, 2 Jones Eq. (N. C.) 13.

Where there are two wills and a codicil, the codicil will operate as a republication of that will to which it refers: Hill v. Chapman, 1 Ves. Jr. 408, n. 4; Jansen v. Jansen, 1 Addams 39; Rogers v. Pittis, 1 Id. 38; Walpole v. Orford, 3 Ves. Jr. 402; Walpole v. Cholmondeley, 7 T. R. 138; Crosbie v. McDonal, 4 Ves., Jr., 616; Marwood v. Turner, 3 P. Wms. 168.

Prior to the Act of 1833, the republication might be by parol; and it was held that anything that expressed the testator's intention that the will should be considered as of a later date, was sufficient: Havard v. Davis, 2 Binn. 415; Jones v. Hartley, 2 Whart. 110; Lawson v. Morrison, 2 Dal. 289; Flintham v. Bradford, 10 Barr 85.

Secondly. The codicil to the will of 1850 revokes the intermediate will of August 1857. This necessarily follows from the position established by the above authorities, that the will of

1850 was revived and republished by said codicil, and the authorities cited above will be found conclusive upon this point also. See also Walpole *v.* Orford, 3 Ves. Jr. 402; Walpole *v.* Cholmondeley, 7 T. R. 138; Hill *v.* Chapman, 1 Ves. Jr. 408, n. 4; Rogers *v.* Pittis, 1 Addams 38; Crosbie *v.* McDonal, 4 Ves. 616; Havard *v.* Davis, 2 Binn. 415; Jones *v.* Hartley, 2 Whart. 110; Williams on Executors 161, 189; 2 Bl. Com. 502.

The appellant seems, however, to rely on two propositions to avoid the effect of the decisions in England and the United States. The first is, that the will of August 1857 revoked all wills by testator theretofore made; and that this "revoked and annulled," and "legally and effectually destroyed" the will of 1850.

As "a testament is of no force at all while the testator liveth," and only takes effect at the time of his death, the will of August 1857 must first be shown to be itself unrevoked, and to be the last testamentary paper, before it can have this effect. The clause of revocation falls with the will that contains it when it is revoked: Flintham *v.* Bradford, 10 Barr 85.

The second proposition is based on the 13th and 14th sections of the Act of 8th April 1833. Under this act it is contended by the appellant that, as the codicil of October 1857 contains no clause of revocation, it did not repeal the will of August 1857; because, says he, a will or codicil, in order to repeal a prior will, must "declare that intention in clear terms."

This is a forced construction of the plain language of the act. It provides that no will in writing shall be repealed or altered, except in one of several ways. These are—

1st. By some other will. 2d. By some other codicil. 3d. By any other writing declaring the repeal or alteration. 4th. By destroying or cancelling the will.

That this is the construction given by the Supreme Court, see Clark *v.* Morrison, 1 Casey 456; Heise *v.* Heise, 7 Id. 249.

The apppellant would construe the act as though it read, "by some other will or codicil in writing declaring the same," or "by some other writing declaring the same;" thus requiring in every later will a clause of revocation, and asking the court to decide that, where the last will does not contain such a clause, the first, however inconsistent therewith, is not repealed.

The sole intent of the Act of 1833, it is submitted, was to prevent the revocation of wills by parol, and to obviate the necessity of resorting to the uncertain testimony of witnesses as to testator's acts and intentions. This was the mischief to be avoided, and the remedy provided is to require either that the testator should destroy or cancel the will or codicil, or make a later one. It was not intended, nor can its language be fairly

[Neff's Appeal.]

construed to declare, that a last will or codicil in writing shall have no effect unless it expressly repeals all prior wills.

The opinion of the court was delivered, January 30th 1865, by STRONG, J.—That the effect of a codicil duly executed is to republish the will to which it refers, whether the codicil be annexed to the will or not, is the doctrine of all the authorities. The legal presumption of intended republication may indeed be rebutted by the language of the codicil; but in the absence of any expressed intent to the contrary, it always operates as a new adoption of the will, and a republication at the time when the codicil was made. Upon so plain a subject it seems almost superfluous to refer to authorities. In Goodtitle v. Meredith, 2 M. & S. 5, 13, the language of the judges was, as expressed by Lord Ellenborough, C. J. : " What the effect of a codicil is, has been settled in a series of cases, beginning with Acherly v. Vernon, Com. 381, down to Barnes v. Crowe, 1 Ves. Jr. 486, and lastly, in a more recent case of Pigott v Waller, 17 Ves. Jr. 98, 117. The effect of all these decisions is to give an effect to the codicil *per se*, and independently of any intention, so as to bring down the will to the date of the codicil, making the will speak as of that date, unless indeed a contrary intention be shown, in which case it will repel that effect." And again, in the same case : " The codicil draws the will down to its own date in the very terms of the will, and makes it operate as if it had been executed in those terms." The English cases are collected largely by Mr. Jarman, in his edition of Powell on Devises, vol. 1, p. 611, note 1, and many of the American cases are cited in Van Cortlandt v. Kip, 1 Hill 590. They leave no room for doubt. That such was the rule in England prior to the passage of the statute of 1 Vict. ch. 26, and in this state until April 8th 1833, when our present Statute of Wills was enacted, is conceded by the appellant; but it is insisted that by those enactments the law has been changed, and that now a codicil must contain an expressed intent to revive the will to which it is annexed, or to which it refers, in order to have that effect; or contain an expressed intent to revoke a former will, in order to work its revocation, unless the dispositions made by the codicil are inconsistent with those of the former will. The 22d section of the British statute is as follows: "No will or codicil, or any part thereof which shall be in any manner revoked, shall be revived otherwise than by the re-execution thereof, or by a codicil executed in manner herein before required, and showing an intention to revive the same ; and where any will or codicil which shall be partly revoked, and afterwards wholly revoked, shall be revived, such revival shall not extend to so much thereof· as shall have been revoked before the revocation of the whole thereof, unless

an intention to the contrary shall be shown." It is argued that since this statute, a codicil to a will does not revive it, or republish it so as to make it a revocation of another will made prior to the codicil, if it does not contain an expressed intention to work such republication or revocation. Such, however, is not the construction given to the statute in England. Mr. Jarman, in the first volume of his Treatise on Wills, page 723, as introductory to his comments on the recent case of Ashley *v.* Waugh, says: " Whether the codicil does, in point of fact, operate to republish the will is a question to be ascertained by a reference to the old laws; for the recent statute does not appear to have introduced any new principle in regard to republication. The rule then, it is confidently conceived, must still be as formerly, that a codicil will operate to republish a will, unless its effect to do so is negatived by the contents of the codicil itself." True, a codicil must show an intention to revive in order to work a revival; but it necessarily shows such an intention unless it be disclaimed. A codicil is a written alteration of a will or addition to it, executed in the manner required by law. The act of executing it involves an intention that it shall operate as part of a will. It is unmeaning unless it does. It therefore necessarily evinces a design that the will of which it is made a part shall be a will; that if it has been revoked, it shall have new life.

And there is nothing in our own Statute of Wills to change the rule so long and so universally received that a codicil republishes a will to which it is annexed, unless it affirmatively manifest a contrary intent. It is in several particulars unlike the British statute. It has more direct reference to the repeal of wills, or the alteration of devises and directions contained in them, but even in regard to such repeals or alterations, it undertakes to give no new or diminished effect to a codicil. The 13th section enacts that " no will in writing concerning any real estate shall be repealed, nor shall any devise or direction therein be altered otherwise than by some other will or codicil in writing, or other writing declaring the same, executed and proved in the same manner as is hereinbefore provided, or by burning, cancelling, &c." The 14th section makes similar provisions in regard to wills respecting personal estate, adding, however, to the modes in which repeals and alterations may be made, the instrumentality of a nuncupative will. A will then is a legitimate mode of repealing another will or altering its devises or directions. So is a codicil. So is another writing not a will or codicil, declaring a repeal or alteration. So is a burning and cancellation, and in case of personalty, so is a nuncupative will. An intent to revoke an existing will, and consequently a revocation, may be shown in either of these ways, and in these respects there is no change of

[Neff's Appeal.]

the law as it was under the Act of 1705.    True, a republication by parol is no longer possible, but that is because of other provisions of the act which define the mode in which alone a will may be made.    They have no bearing upon the question now under discussion, for republication by a codicil is not parol republication.    The sole object of the 13th and 14th sections of the Act of 1833 was to prevent the possibility of revoking or altering wills by parol, except by destruction or cancellation, and this it did by requiring the intent of the testator to be manifested in writing.    But it did not undertake to define what construction should be given to a written manifestation.

It is still the law, then, as it always was, that a codicil to a will is a republication of it, unless the contrary intent be avowed by the testator, and that it makes the will republished, to speak from the date of ·the codicil.    To use the language of Lord Abinger in Doe ex dem. York v. Walker, 12 M. & W. 597, the will must be construed " as if the testator had inserted in the codicil all the words of the will."

. Applying these principles to the case before us, the result is plain.    The first will of the testator was made on the 22d of April 1850.    It was duly executed and attested by two witnesses. It contained a clause revoking all wills before made by him.    On the 14th of August 1857, the testator made a second will, signed by him but not attested.    It was still in form a good will.    It also contained a clause revoking former wills.    Of course it sup planted, temporarily at least, the will made in 1850.    But afterwards, on the 10th of October 1857, the testator added a codicil to the first will, in which he revoked some of the dispositions therein made, and spoke of the instrument as " the foregoing will."    This codicil was duly executed and attested by two witnesses.    It refers expressly to the first will, and speaks of it as a will.    It therefore republished it, and gave to it the same effect as if it had been first made on the 10th of October 1857. Containing a general revocation of former wills, as already noticed, it of course revoked the will made in August previous, and became itself the last will of the testator as it had been the first.    Hence it is unnecessary to inquire in what respects the two wills differed.    By its republication the will to which the codicil was annexed became the last, and it was entitled to probate as such.    The decree of the Register's Court was therefore correct.

                                        Decree affirmed.