## Knecht's Estate.

Argued January 30, 1941.  Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Willard Paff,* of *Smith & Paff,* for appellants.

*Francis H. S. Ede,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 24, 1941:
This appeal is from a decree of the Orphans' Court of Northampton County sustaining an appeal taken by Edwin F. Knecht from the decision of the register of wills, admitting to probate a testamentary instrument, dated April 30, 1937, and a writing dated April 23, 1940, purporting to be a codicil thereto, as the last will and testament of his deceased wife, Ada J. Rundle Knecht, who died, on April 28, 1940, in St. Luke's Hospital, Bethlehem, Pennsylvania.

Prior to her marriage to Edwin F. Knecht testatrix executed two formal wills. By the earlier of the two, dated July 12, 1927, the original of which has not been produced, she gave the whole of her estate, except for bequests of $500 to each of her two sisters, Emily A. Shaplin and Elizabeth R. Tucker, to The First National Bank of Pen Argyl, which institution she also named as executor, in trust to pay the income and principal, if necessary for his care and maintenance, to her invalid brother, George E. Rundle, during his lifetime, the balance remaining at his death to be divided equally between her aforementioned two sisters. Following the death of the invalid brother, in January of 1937, testatrix removed this will from the bank, where she had left it for safekeeping, and thereafter, on April 30, 1937, executed a new will, "revoking all former wills by me at any time heretofore made", by which she gave all her estate to her two sisters, share and share alike, and named them and a nephew by marriage, Charles O. R. Martin, as executors.

On August 8, 1938, testatrix was married to Edwin F. Knecht, following which, on March 4, 1939, in con-

templation of a trip to California with her husband, she made an informal will which she stated to be "my latest Will", providing as follows: "After my funeral expenses are paid, and a head stone or marker is paid, the income of all my investments, such as money in the banks, bonds, and mortgages is to be collected by my husband, Edwin F. Knecht, for the rest of his natural life. At his death to be divided in six equal parts, those to receive it are Emily Shaplin, Elizabeth Tucker, Ethel Martin, Martha Herd, Henry Tucker, Walter Shaplin all these my nearest relatives. Furniture and other personal property to be divided. In case the heirs cannot agree to divide, they all must be sold and divide the money equally, or in six shares." After her return from California, and while she was confined as a patient in St. Luke's hospital by reason of her last illness, testatrix, on April 23, 1940, executed and prepared a formal "Codicil to my last Will and Testament dated approximately ten years ago", reciting that it is made "Owing to the fact that I have become intermarried with Edwin F. Knecht, of the Borough of Wind Gap, County and State aforesaid; since the writing of my last Will & Testament at which time I was a single woman, (my name being Ada Jane Rundle at that time)", and providing: "Therefore I hereby give, devise and bequeath unto my said beloved husband Edwin F. Knecht, of Wind Gap Borough, the income from my entire estate, Real, Personal and mixed, whatsoever and wheresoever the same may be at the time of my decease, for and during his natural life, and after the death of my said husband Edwin F. Knecht, all of my estate, as mentioned in my said last Will & Testament shall then be disposed of as and according to my said last Will & Testament." Testatrix died in St. Luke's hospital on April 28, 1940, five days after the execution of this instrument.

Upon the death of testatrix, the formal will of April 30, 1937, was produced and offered for probate by the

executors named therein, as was also the codicil of April 23, 1940, which was offered as purporting to be a codicil thereto. These writings were duly probated by the Register of Wills as together constituting the last will and testament of testatrix, and letters testamentary were issued to the executors. Thereupon the surviving husband, who had offered the informal writing dated May 4, 1939 for probate as the last will and testament of testatrix, demanding that letters of administration c.t.a. be issued to him thereon, appealed to the orphans' court. On appeal, the orphans' court concluded that "the will bearing date May 4, 1939 and what [testatrix] states as a codicil bearing date April 23, 1940 must be taken together as carrying out her intention to dispose of her entire estate", stating: "It seems to us to be plain that the decedent intended the codicil of April 23, 1940, to be made a part of her will as written on May 4, 1939, even though she says that it is a codicil to her last will and testament dated approximately ten years ago." In accordance with this view, the court sustained the husband's appeal and entered the decree from which this appeal was taken, ordering that the register "admit to probate the instrument in writing of the decedent dated May 4, 1939, upon proper proof of [testatrix's] signature thereto, and further to probate the instrument in writing signed by her and duly witnessed bearing date April 23, 1940, as a codicil to the writing bearing date May 4, 1939," and directing the register "to issue letters of administration c.t.a. or d.b.n.c.t.a. to the surviving husband of the said decedent, upon his petitioning for same." This appeal followed.

The conclusion of the court below that "the decedent intended the codicil of April 23, 1940, to be made part of her will as written, on May 4, 1939," is manifestly erroneous, for it completely ignores the unambiguous reference, in the codicil, to a will executed prior to testatrix's marriage to appellee "at which time I was a single woman (my name being Ada J. Rundle at that

time)".* The entire history of testatrix's testamentary dispositions, as above outlined, and the circumstances under which it was found after her death, in her safe where she had placed it, as well as the language of the codicil when taken as a whole, all point to the conclusion that testatrix intended it as a codicil to her last formal will, and the only will executed prior to her marriage in existence at the time of her death, to wit, the will of April 30, 1937, and this notwithstanding the phrase "executed approximately ten years ago", the insertion of which was probably due to an error or oversight on the part of the scrivener and is sufficiently accounted for by testatrix's explanation, as a part of the codicil, that "The reason for the date of the last will and testament having been omitted above, is on account of the testatrix being very ill in St. Luke's hospital at the time of the making of this codicil and it was not possible to have access to said last will at the time and place." The reference to the will of April 30, 1937, being, in our opinion, unmistakable, the decree entered by the court below cannot be sustained. It is well settled that, in the absence of a contrary intention, "A duly executed codicil operates as a republication of the original will, so as to make it speak as of the date of the codicil . . . ; and it not only operates as a new adoption of the prior will to which it refers, but also as a revocation of an intermediate will": *DeHaven's Estate (No. 2)*, 207 Pa. 152, 153. See also *Neff's Appeal*, 48 Pa. 501; *Linnard's Appeal*, 93 Pa. 313; *Bradish v. McClellan*, 100 Pa. 607; *Gilmor's Estate*, 154 Pa. 523; *Revercomb's Estate*, 315 Pa. 424. Moreover, irrespective of the sufficiency of the

---

* Appellee states that he "did not take the position as the court below has decided, but did take the position that the codicil did not attach to a will that was in existence because the codicil specifically refers to a will made 'approximately ten years ago' *and* 'when [testatrix] was single,'" but that he "is perfectly satisfied with the opinion of the court below . . . and for that reason took no appeal."

reference in the codicil to effectuate the obvious intention of the testatrix, appellee has no standing to question the decision of the register of wills admitting to probate the writings of April 30, 1937 and April 23, 1940 as constituting her last will and testament, or to compel substitution therefor of the writing dated May 4, 1939.

"The register of wills being a judicial officer, admitting a will to probate and granting letters testamentary thereon being judicial acts, the judgment must stand as final against all except those who have a right to contest it by appeal therefrom. The jurisdiction of the register over the subject being wholly statutory, the right of any appeal must also be statutory, as also the designation of the parties on whom is conferred the right": *Shepard's Estate,* 170 Pa. 323, 326. Section 17 of the Register of Wills Act of 1917, P. L. 415, enacts that: "Whenever a caveat shall be entered against the admission of any testamentary writing to probate, and the person entering the same shall allege as the ground thereof any matter of fact touching the validity of such writing, it shall be lawful for the register, *at the request of any person interested,* to issue a precept . . . in substantially the following form, viz:" Then follows the statutory precept, concluding as follows: "and further that you cause *all other persons who may be interested* in the estate of the said [decedent], as heirs, relations, or next of kin, devisees, legatees, or executors, to be warned so that they may come into our said court and become a party to the said action, if they shall see cause. . . ." Section 21(a), authorizing appeals to the orphans' court "From all the judicial acts and proceedings of the several registers, including all decisions granting an issue devisavit vel non, in a contest concerning the validity of a will", provides that, *"Any party entitled to appeal* may be cited by such court to show cause why he should not appeal. . . ." And, in section 16(a), it is declared that "The probate, or re-

fusal of probate, by the register of the proper county of any will, or any other paper purporting to be a will or codicil thereto, shall be conclusive . . . unless within two years from the date of such probate or refusal of probate, *those interested* shall appeal from the decree of the register as herein provided."

It is evident from a comparison of the provision made for appellee under the will of 1937, as modified by the writing of April 23, 1940, with the provision made for him by the writing made May 4, 1939, that whether he participates in testatrix's estate under the terms of the former instruments, probate of which he seeks to have set aside, or under the latter, which he seeks to have substituted therefor, is immaterial, for in either case he would receive precisely the same interest in the estate, i. e., the income therefrom for life. This being true, he cannot be regarded as a "person interested" in setting aside the probate, or as a "party entitled to appeal", within the meaning of the above-quoted provisions of the Register of Wills Act: *Boland's Estate,* 99 Pa. Superior Ct. 321; Anno. L. R. A. 1918(A), 462, et seq. The right of appellee to letters of administration c.t.a. on his deceased wife's estate, which, although preferred, is not absolute, but contingent, (Fiduciaries Act of 1917, P. L. 447, section 2(c) ; *Friese's Estate,* 317 Pa. 86; *Boytor's Estate,* 130 Pa. Superior Ct. 591), is not such an interest in the estate as entitles him to contest the will: *McMasters v. Blair,* 29 Pa. 298, 305; *Egbert v. Egbert,* 186 Ky. 486, 217 S. W. 365; *Murphy v. Fallon,* 107 Iowa 120, 77 N. W. 575; *Sanborn's Estate,* 98 Cal. 103, 32 Pac. 865. This conclusion alone requires that the decree of the learned court below sustaining the appeal from the decision of the register of wills be reversed, and although appellee's right to appeal therefrom was not questioned in the court below, and has not been specifically made the basis of an assignment of error on this appeal. Section 22(b) of Orphans' Court Act of June 7, 1917, P. L. 363, providing that "The Supreme and

Superior courts of this Commonwealth shall, in all cases of appeal from the definitive sentence or decree of the orphans' court, hear, try and determine the same as to right and justice may belong, and decree according to the equity thereof," has been interpreted to require that this Court should determine every basic question involved in such appeal which goes to the merits of the decree as made: *Fenelli's Estate,* 323 Pa. 49, 52; *Pollock's Estate,* 306 Pa. 301, 312; *Heckman's Estate,* 236 Pa. 193, 196.

Decree reversed, and the order of the Register of Wills, probating the will of 1937 and codicil of 1940, is reinstated and affirmed. Costs to be paid by appellee.