## Winters' Estate

*Robert W. Beatty* and *George M. Brodhead, Jr.*, for proponents.

*Howard M. Lutz*, for caveator.

CHADWICK, P. J., December 5, 1945.—This matter was brought to the court's attention on the morning of Monday, November 19, 1945, upon the presentation of caveator's petition to have the record in the above matter certified by the register of wills to this court, for determination of the question whether the will or testamentary paper be admitted to probate, or an issue d. v. n. be directed.

The attorney for petitioning caveator and the attorney for proponents of the will were both present, and after an informal discussion of the background situation and the facts it was apparent that there would be involved a novel question of law, with sufficient factual foundation to raise a reasonable prospect that the matter, if left to the register for decision, would nevertheless finally reach this court. Moreover, proponents had brought all of their witnesses because the date had been previously set by the register to hear the caveat, and we were informed that pressing problems of administration of the estate argued

against any unnecessary delay. In this situation we indicated that we would act favorably on the petition if the parties could mutually adjust themselves to prompt hearing.

We accordingly left the matter of procedure initially to the parties for discussion, and were finally advised that it was satisfactory to all parties to proceed immediately to hearing in this court, with the right to answer the petition reserved to proponents (who later filed a responsive answer). Upon this assurance the court exercised its discretionary power to allow the petition, and arrangements were made to commence the hearing at 2 p.m. on the same day.

Proponents contented themselves with offering formal proof of execution of the alleged testamentary writing dated March 28, 1945, in which the City National Bank of Philadelphia, Charles L. Crowder, and William V. K. Shepard are named as executors and trustees. Caveator then proceeded, by his own testimony and that of one witness, supplemented by documentary evidence; all of which was heard and admitted over a general objection by proponents' counsel as to relevancy, competency and materiality, on the ground that caveator had disclosed no such interest in the matter as the statute requires. The case was continued to Wednesday, November 21, 1945, to permit caveator to bring in other witnesses on the questions of testamentary capacity and undue influence, as alleged in his petition.

At the later hearing, caveator stated that the latter questions would not be pressed, and that he proposed to rest his case on the question of an alleged contractual right of his client to be designated and appointed executor and trustee under decedent's will; a right, which if it existed, is denied by the terms of the proposed instrument. Further testimony was taken for

caveator and other documentary evidence was adduced and admitted, likewise over proponents' general objection, and incidentally certain additional special objections. It was expressly understood that the court reserved its final ruling on all the evidence until the case had been fully developed. Caveator also offered to prove two earlier wills as testamentary dispositions, for which he claimed probate. These latter offers were upon objection refused by the court, on the double ground that they were premature, and that nothing in caveator's case tended to destroy the validity of the most recent will in any other particular than the noninclusion of caveator as an executor and trustee. This action was also protected by exceptions.

Leave was accorded caveator to amend his petition to accord with the facts developed; this was done, by an amended petition filed, to which proponents filed an amended answer.

At this point we turn aside to comment adversely upon the action of one of parties proponent in destroying one of these earlier wills, which had to be proven by photostatic copy. We think that no person other than testator himself has any moral or legal right to destroy a testamentary writing, at least prior to the probate of another paper purporting to be the last will; and that even then the better practice is to preserve such papers. It is not unusual for testators to make reference, by codicil or otherwise, to such earlier writings, and such codicils are not always called immediately to the attention of the persons who have custody of the papers. We trust that hereafter the custodians of wills of Delaware County residents will refrain from practices such as this.

All of the evidence offered is now under our consideration. We gather from this evidence that decedent and the caveator, a member of the bar, had established

a business relation which required caveator to make a very drastic rearrangement of his business affairs and activities; that the parties had discussed and arrived at an arrangement whereby caveator entered into a long term (five-year) contract of employment with decedent's personally dominated corporation, upon the promise (and to that extent at least the assurance) that he was to be appointed executor and trustee of decedent's will, a relationship made more important to him by reason of his stock ownership in the employing corporation and other corporations formed after the association was made. We have evidence as to the circumstances of this negotiation, and further evidence that two wills were in fact made (drawn by caveator and signed by decedent) in both of which the executor-trustee relationship was established. The agreement of employment (caveator's exhibit no. 1) was dated February 24, 1944; the first testamentary paper prepared and executed by decedent was dated May 18, 1944; the second was dated December 28, 1944. The last will was dated March 28, 1945. It nowhere appears that it was ever contemplated that caveator was to be sole executor; in fact, in both the earlier testamentary instruments co-executors and co-trustees were named. Nor is there any evidence that it was ever expressly prescribed that such appointment was irrevocable, although this inference may be implicit in what was said and done by the parties.

The factual situation imposed a difficult question of fact, which if material may require reference to a jury, and two or possibly three questions of law, all novel so far as our information now goes.

These questions presented themselves to us as follows (and our rulings on evidence were based on our desire to close no doors prematurely):

1. Does the evidence disclose the basis of a contract between the parties with relation to the executorship and trusteeship?

2. If so, does this contract operate to establish the caveator as a party in interest, so as to open the door to the consideration of his objection to the probate of the will?

3. Assuming both these questions to be answerable in the affirmative, does decedent's subsequent disregard of the contract render the proposed will invalid so as to prevent its probate, or

4. If not, is there any remedy now available to the injured party to have his name added now to the list of executors named in the last will?

If the first question could now be finally answered by this court, our finding might be to the contrary; such view would be predicated upon the testimony of the witness, Walter W. Clark, as to what was actually said between the parties. Knowing that caveator was insisting among other things on protection in event of decedent's death, the latter said: "I think I have the answer to that; I will give Mr. Huplits his contract and I will make him an executor and trustee of my will." This he in fact did, and apparently caveator accepted this as the assurance he desired. He seems to have relied upon decedent not to change his mind about this, and he made his own dispositions accordingly (in that sense, relying thereon and induced thereby). This leaves us in some doubt whether the elements of an enforcible contract are shown, but the alleged contract abides in parole; it affects testamentary dispositions, and we note that in McGinley's Estate, 257 Pa. 478, a somewhat analagous state of facts, giving rise to contract affecting testamentary dispositions of property, was returned by the Supreme Court to be submitted to a jury on an issue devisavit vel non. In such a case, the question is not what the court thinks of the contract, but rather whether a jury verdict, finding its existence, can be sustained as justified by the weight of the evidence. A jury might, we think now,

not without propriety, reach a different conclusion than we would. The testimony of the witness Clark went further than his recital of the words used; he added later: "Mr. Winters then repeated that if Mr. Huplits would sign the contract for employment, he, Mr. Winters, would execute the will appointing Mr. Huplits as executor and trustee". The inferences of all this testimony may well be for the jury; and there is in the case possibly room for an application of the principle of promissory estoppel. We assume therefore for the purposes of our problem that the contract for which caveator contends may have existed.

Such a possibility brings us to the next question, involving caveator's status as an interested party. We were impressed when the case was first opened with the fact that it would apparently involve the consideration of the essential nature of an executorship. We have since examined the books on the subject with some care, and we find little in them to aid us. Accepting the fact that contracts with respect to property rights can be legally made in such way as to affect subsequent testamentary disposition at the stage of probate (McGinley's Estate, 257 Pa. 478, for example), the question still remains whether a contract relating to the appointment of an executor and trustee comes within this category. An executor ordinarily has no interest as such in the estate such as would seem to bring him within the class of persons to whom the right of appeal from probate is allowed; certainly an administrator c. t. a. has none: Knecht's Estate, 341 Pa. 292. (Where, however, the question grows out of the refusal to probate executor's will, a different view was entertained in King's Will, 13 Phila. 379). An executor is the personally chosen representative of the testator; as such he has rights which cannot be disregarded at the caprice of the beneficiaries (Radler's Estate, 58 York 107) ; but these rights are apparently

based, not upon something vested in him individually, but rather arise from a duty imposed upon him by testator (see also King's Will, supra). Essentially, it is the rights of the testator which are enforced in such last mentioned cases.

We supplemented the efforts of counsel by an independent investigation of the law on the subject, and we ourselves found no case exactly in point in any jurisdiction. We found no case in any jurisdiction wherein the question of an executor's interest in the estate was founded on an alleged contract, but it is worthwhile here to refer to the cases which we did find, which seem to strengthen the view that an executor as such has no interest in the estate such as will warrant him in maintaining a contest of the will. These authorities follow:

"An executor named in one will has been held to have such an interest as to entitle him to oppose the probate of another will by the same testator (citing several cases). But, on the other hand, it has been held that an executor who is not an heir, or otherwise interested in the will or property, has not such an interest as will authorize him to contest the probate of another will or codicil executed by the same testator," 68 C. J. 906, §637; citing Johnston v. Willis et al., 147 Md. 237, 127 Atl. 862, Stewart's Estate, 107 Iowa 117, 77 N. W. 574, and Helfrich v. Yockel, 143 Md. 371, 122 Atl. 360.

We examined those of the cases cited for the first proposition which are available to us; we find that in California and Minnesota at least (Langley's Estate, 140 Cal. 126, 73 Pac. 824; Murphy's Estate, 189 N. W. 413) the executor is regarded as "the champion of the will", and his rights to contest a later will are based on that conception; but in our case caveator has no will to champion.

The case of Johnston v. Willis is an expression of what is apparently clearly the Maryland rule with respect to executors; and the standard of interest in that State apparently is substantially like our own. The question that court undertook to determine was the legal right of appellant individually, or as executor or *trustee* under a prior will, to file a caveat against a subsequent will. The court below denied the right to maintain the caveat. The Maryland Court of Appeals was of the opinion that this right was not vested in him either individually or as a previously designated executor, but held that caveator's interest as a trustee was sufficient, and remanded the case for further proceedings upon the caveat. The incidents of the trusteeship in that case were not apparently stronger than the authorities vested in the trustees in any of our decedent's testamentary writings.

The case of Helfrich v. Yockel, 143 Md. 371, 122 Atl. 360, decided in 1923, involved only the question of the right of an executor named in a revoked will to maintain a caveat where the only loss he sustained was for compensation for services he would have rendered. The court was of the opinion that this did not constitute an interest in property of the estate entitling him to a caveat. Incidentally, the court refers to an Iowa case, the Estate of Stewart, 107 Iowa 117, 77 N. W. 574, in which the Iowa court disclaimed any alleged property interest growing out of the right to receive compensation because an executor "gets this only in return for services rendered. He is expected to give full value therefor".

Carpentier's Estate, 104 Cal. App. 33, 285 Pac. 348, from a district court of California, is interesting, because in that case decedent had executed a document which the contestant claimed was both a will and a contract to leave by will certain property therein described,

to contestant. Subsequently decedent executed a will expressly revoking all previous wills and making a different disposition of the property, which was offered for probate. Contestant (a legatee) filed a contest based upon the earlier writing and proposed said earlier document for probate. The court below sustained a demurrer to the contest; admitted the latter will to probate, and denied probate to the earlier document. We quote the following from the opinion:

"A will, though it may be irrevocable as a contract is none the less revocable as a will, and in case such a will is revoked, the injured party cannot contest the later will in the probate court on that ground or insist on the probate of the earlier will, but is remitted to an independent action at law or in equity to enforce whatever rights he may have."

Proponents of the will cite to us among others Royer's Estate, 6 Pa. Superior Ct. 401, as touching upon but not deciding the question; they refer us to the lengthy note in 69 A. L. R. 14, dealing with contracts to leave property to another. Such contracts proponents recognize as enforcible, but they do not agree that the present alleged contract is in that category. They think the cases point to the conclusion that the only proper way to enforce any such contract is not by reinstating prior wills, but by proceedings to claim the property to which the contract refers.

Incidentally (and not particularly applicable just at this point) is their contention that a person cannot legally appoint an executor except by his last will in writing unless he is in extremis, and add the consideration that if a man cannot appoint an executor by an oral will, he cannot be compelled to appoint one by an oral contract. Proponents also urge the court against any such "specific performance" as is here sought, particularly because of caveator's admitted self-interest,

alleged to disqualify him from being a fiduciary, as against the testator's effort to void such result.

It is suggested in behalf of caveator that this alleged contract affects "a property right of considerable magnitude", and that in the present case such right takes an added importance and substance from the collateral fact that as executor and trustee he would have at least a voice in the management and control of corporations with which he has had important business connections by reason of his relationship to testator, and in which he now holds substantial stock interests. It is further suggested that "the future control of the stock and in turn the corporation was vital to Mr. Huplits" and that such interest "cannot be measured or weighed in money value". We think both the latter observations are true; these considerations may not however be safe guides to decision in this case.

As the case is finally presented to us upon caveator's brief, it is now admitted that the proposed will may rightfully be probated; we are asked, however, to find that there was a contract, and to enforce the same it is urged that this court should direct at this stage that caveator, William H. Huplits, Jr., be made an executor and trustee. Thus the third of the questions we thought might be in the case is eliminated. And for our immediate purposes, we must ourselves answer the last one in the negative, and as we have hereinbefore indicated, we think the second question must also be so answered, at least so far as the present claim to an executorship is involved. These adverse conclusions are, we intend, to be subject to the exceptions which will be noted by us to the decree we will enter. We do not think that (even if the caveator has any interest) it attaches at this stage. We find ourselves compelled to decide that we could not now with propriety order him to be an executor; any rights he may have to a trusteeship can and must be decided later, at any time prior to audit of the executors' account.

We are, however, not required to go any further at this point in giving effect to our views than to enter the following decree:

And now, December 5, 1945, the caveat filed October 29, 1945, by William H. Huplits, Jr., is hereby dismissed; and the record, including the transcript of the testimony, is hereby remanded to the register of wills with instructions to admit to probate the testamentary writing now before us, dated March 28, 1945, for such further action thereon as may be appropriate with respect thereto.

Exception is hereby allowed to caveator.