## Frazier Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

*William Carson Bodine* and *James A. Montgomery, Jr.*, for accountants.

*Lewis H. Van Dusen, Jr.*, and *Henry W. Sawyer, 3rd*, of *Drinker, Biddle & Reath*, for exceptants.

*T. McKeen Chidsey*, Attorney General, and *F. Gilman Spencer*, Deputy Attorney General, for Commonwealth of Pennsylvania.

LADNER, J., March 3, 1950.—Mary Fuller Frazier died August 6, 1948, unmarried, without issue, leaving a will and codicil by which, after direction to pay debts, funeral expenses and making provisions for her interment, she bequeathed certain specific and pecuniary legacies not necessary to recite, and then by the twenty-first paragraph of her will gave one half of her residuary estate to her executors in trust "to be applied, distributed and paid over exclusively for public charitable literary or educational purposes in the town of Perryopolis, Fayette County, Pennsylvania, where I was born and lived and where my father and mother lived and my grandfather and grandmother lived. The public charitable literary or educational purposes for which my residuary estate shall be used shall be selected by my executors or the survivor of them in exercise of their sole discretion after consultation with the town officials of the town of Perryopolis", with further directions more fully set forth in her will.

She then gave the other one half of her residuary estate in trust "to apply the *net income* to and for the construction, maintenance, repair and upkeep of such public charitable literary or educational objects and institutions in the town of Perryopolis as may be selected by my executors or the survivor of them in accordance with the provisions of Paragraph (a) of this section of my will".

Decedent died August 6, 1948, and her will and codicils were probated August 16, 1948, as those of a Philadelphia resident before the Register of Wills of Philadelphia County. Letters testamentary were granted to the Fidelity-Philadelphia Trust Company and Thomas Stokes, the executors named in the will, on the same day. Decedent left a considerable personal estate of a gross value of $2,025,000, and real estate in Lower Merion Township, Pa., near Paoli, and a third property in Ridgefield, Conn.

With the exception of the Connecticut real estate and certain jewelry, cash, household and personal effects (valued at approximately $60,000) which were stored in a warehouse in New York City, her whole estate, real and personal, was located in Pennsylvania, and all of that except the two Main Line properties, was located in Philadelphia.

The administration of the estate having been completed, an account was filed which was listed for audit September 19, 1949. At the audit counsel, stating that he appeared for six first cousins, requested a general continuance on the ground that he intended to appeal from the probate of the will solely on the ground that decedent was domiciled not in Pennsylvania but in Connecticut. It was expressly stated to the auditing judge that the cousins did not intend to contest the *validity* of the will but merely the probate thereof on

the ground that Connecticut was the domicile of decedent at the time of her death.

It appears in the course of the argument of his motion for continuance of the audit counsel mentioned that under the Connecticut law bequests for charitable purposes are limited, and beyond the limited amount decedent's next of kin would be entitled to take. There was, however, no proof of any such law nor any citation or reference under the Uniform Proof of Statutes Act of May 5, 1921, P. L. 373, nor any other proper proof from which the auditing judge could find that the first cousins had any interest whatsoever in the proceedings then before him. However, the auditing judge, nevertheless, over the objections of counsel for accountant, continued the audit from September 21st to Wednesday, October 5th. On that day counsel for the first cousins sent word that he was engaged in the Federal court, whereupon the case was continued successively to Thursday, October 6th; Friday, October 7th, and finally to October 10th.

On October 10, 1949, counsel for the cousins appeared and again objected to the account being audited on the ground that he had filed an appeal questioning the jurisdiction of the register in probating the will and requested suspension of the audit proceedings until that appeal had been first disposed of. Again there was no proof of the interest of his client except the vague statement hereinabove referred to.

It does seem to us that counsel was without standing to object to the audit proceedings without first showing proof of an interest. As there was no such showing, we have serious doubts whether counsel for the so-called six first cousins had any standing to file the exceptions now before us. See Knecht's Estate, 341 Pa. 292, and cases there cited on page 298.

However, it is not necessary for us to put our dismissal of the exceptions before us on that ground, for

we find no merit in them. The auditing judge, mindful of section 21 (*b*) of the Register of Wills' Act of June 7, 1917, P. L. 415, which provides:

"No appeal from any decree of the Register concerning the validity of a will, or the right to administer, shall suspend the powers or prejudice the acts of any executor or administrator to whom letters have been granted," proceeded with the audit.

At that audit, counsel for the six cousins filed objections to a large number of credits taken in the account for actual expenditures made by the accountant covering items dealing with the expenditures for the care of testatrix's mausoleum, items relating to the payment for medical services to decedent, and finally to the payment of the transfer inheritance tax assessed by the State of Pennsylvania in the sum of $171,113.48, all of which appear from the account to have been paid long prior to the appeal from probate.

By his adjudication, the learned auditing judge very properly gave due effect to section 21 (*b*) of the Register of Wills' Act as above quoted, and confirmed the expenditures made. To his action in so doing counsel for the six cousins has filed seven exceptions in this court. Of these, exceptions 1, 2, 3, 4, 6 and 7 charge error in refusing to continue or suspend the audit or in not excluding from confirmation the credit for payment of State inheritance tax. In confirming the account, the adjudication as to that credit reads:

"In connection with the inheritance tax, it is to be noted that the Commonwealth has intervened and is now before me. While I approve the payment of the tax by the accountant, if it is ultimately found that such payment is not due the Commonwealth, it is without prejudice to the rights of the accountants or any party in interest, to demand repayment for such tax, if any, as may be found not to be due."

We approve of the disposition thus made by the auditing judge. The record shows that decedent died August 6, 1948; that letters testamentary were granted August 16, 1948; that the inheritance tax was paid on July 29, 1949, just eight days short of the expiration of the year after decedent's death. When paid, no appeal had yet been taken from the probate. It is true that in January 1949 a letter had been received from former counsel for these first cousins to the effect he was considering an appeal from probate; but nothing further was heard from him, nor did he ever actually take an appeal. The appeal taken by present counsel was not taken until more than two months after the payment of this tax.

Proper administration of decedents' estates is not to be delayed by mere letters of counsel which are not promptly followed by appropriate proceedings.

It is clear that had the accountant withheld payment of this tax, a penalty in substantial amount would have been incurred, which, if the domiciliary jurisdiction in this State be upheld, might well have exposed the accountants to a surcharge for such penalty at the instance of the residuary legatee. Moreover, assuming exceptants have a standing (which they have not so far shown) we cannot see how they have been harmed by the qualified confirmation of the auditing judge. The right to recover the tax, if the jurisdiction of register be not upheld, was not only reserved by the learned auditing judge but conceded at bar by the Special Deputy Attorney General who argued the case for the Commonwealth.

As exception no. 5 was neither argued in the brief nor at the bar of the court, under our well-settled practice it must be regarded as withdrawn.

All other exceptions are now dismissed and the adjudication is confirmed absolutely.