## Houlihan Estate

*Smith, Cahall & Aker* and *J. Brooke Aker*, for contestant.

*William G. W. Vogel* and *Wisler, Pearlstine, Talone & Gerber*, and *Earle N. Barber*, for proponents.

TAXIS, JR., November 10, 1960.—This matter comes before the court on appeal from a decree of the register of wills admitting to probate a certain paper

writing dated March 12, 1959, purporting to be the last will and testament and a paper writing dated April 16, 1959, purporting to be a codicil to said alleged last will and testament of John J. Houlihan, deceased.

Decedent, John J. Houlihan, died August 13, 1959, a resident of 115 Paper Mill Road, Springfield Township, Oreland, Montgomery County, survived by four daughters, Marie E. Green, Madelaine Douglas, Anna Grier and Elizabeth Boyer and one son, John J. Houlihan, Jr. A certain paper writing alleged to be the last will of said decedent and purporting to have been executed on March 12, 1959, together with a holographic codicil executed on April 16, 1959, were admitted to probate by the register of wills on September 15, 1959, and letters testamentary thereon were granted to John J. Houlihan, Jr., executor. Marie E. Green appealed from this decree, averring that the probated will was revoked by the holographic codicil of April 16, 1959, which republished, by its terms, an earlier will executed in August of 1958 and that in the absence of the probate of the August 1958 will, the codicil of April 16, 1959, by its own terms, is not entitled to probate and that, therefore, decedent died intestate.

The probated will, after providing for debts and funeral expenses and certain cash legacies, disposes of the residue as follows: (a) One-half to John J. Houlihan, Jr.; (b) one-fourth to Elizabeth Boyer; (c) remaining one-fourth divided among the other three children.

The probated holographic codicil reads as follows:

"This is a codicil and is to be added to my will I made out in Aug. 1958. From Aug. 15-1958 until my death my Son and his Wife Taken me to his house

and cared and kept me I want to pay them 50 dollars per week and this is to be paid, before my Will is touched.

"/s/ John J. Houlihan
"Sixteenth 16 day of April 1959"

A hearing was held on May 4, 1960. Earle N. Barber, Esq., of the Philadelphia bar, attorney for the proponents, testified that he prepared a will for decedent in September of 1958 and again in March of 1959; that between the time he received instructions from decedent on September 17, 1958, and the time he returned to decedent's home to have the will executed on September 23, 1958, decedent decided upon additional provisions in the will, which were inserted in ink before the will was executed and that another will was prepared and executed by decedent on March 12, 1959. The will of March 12, 1959, simply repeated the provisions of the will of September 23, 1958, but typed in neater form what had been inserted by ink in the 1958 will.

John J. Houlihan, Jr., decedent's son and proponent, testified that at the time of decedent's death he was a member of his son's household and had been since August 15, 1958; that before August 15, 1958, decedent had been living part of the time in the home of his daughter, Marie Green, and part of the time in the home of the witness; that shortly after decedent came to his home on August 15, 1958, Mr. and Mrs. Green delivered to decedent his papers, which were formerly kept at their home; that these papers were taken to the second floor bedroom, which was his father's room, and left there for him in his bureau drawer; that these papers were kept by his father in a box in the bureau drawer, which was accessible to decedent and that to his knowledge none of the papers kept in the box were ever destroyed. Mrs. Anne B.

Houlihan, proponent's wife, corroborated the proponent's testimony and further stated that to her knowledge none of the papers kept in the box were ever destroyed.

Sidney W. Green, son-in-law of decedent and husband of the contestant, testified that decedent was a member of his household between July 26, 1958, and August 15, 1958; that prior to this time, in June of 1958, he had assisted his father-in-law in arranging for the preparation of wills for himself and his wife by taking him to a law office for that purpose; that the will prepared provided for dividing the estate into five parts for the five children; that the week following decedent's wife's death, which occurred July 22, 1958, decedent informed Mr. and Mrs. Green of a desire to make another will; that sometime between August 2 and August 10, 1958, decedent asked for paper, envelope and pen, a place to write and the copy of the will executed in June 1958; that after he finished whatever he was doing, he folded the paper, put it into an envelope, sealed the envelope, gave it to the witness and told the witness to put it with his other papers in his bureau drawer and that decedent told him that the paper constituted his will. He further testified that decedent was, by reason of his infirmities, incapable of removing papers from the drawer and could only instruct others to do so; that decedent never asked the witness to remove the document from the drawer and that the witness never did so. He testified that when decedent left the Green home on August 15, 1958, he asked the witness to take care of decedent's papers until he wanted them; that he later called and asked to have the papers delivered; that the witness and his wife then gathered all decedent's papers together, including all of the papers in the drawer, and put them into a box and delivered them to the house of his brother-in-law. Mrs. Marie E. Green, daughter

of decedent and contestant in this action, corroborated her husband's testimony.

Proponents introduced into evidence testimony to indicate that decedent came to live with his son because of Mrs. Green's desire that he be put into a convalescent home and a statement from decedent's diary in his handwriting as follows: "Marie and Sid taken vacuum cleaner and all my records to me."

Also, proponents introduced into evidence a statement from decedent's diary in his own handwriting which reads as follows:

"Papers in the box at bank May 29-59

"My pass-book number 29396—2514.14

"Will of John J. Houlihan June 16, 1958 to Anne E. Houlihan

"Will of Anne E. Houlihan June 19, 1958

"Power of Attorney Sept. 23-58 Also on March 12-59 my will was made out

"Deed of lot in cemetery

"Birth cert of Mother and Dad

"5 shares of stock No. LNO64449

"12 " " " " CPO5150

"100 " " " " CP 3783

"2 Ins. Policies Metropolitan

"1 Ins. Policy American Stores Co.

"1 Ins. Policy Equitable for 750 pay to Jack"

All the papers listed were accounted for at death.

Ordinarily, a codicil operates as a republication of the will so as to make the will speak as of the date of the codicil, and republication by codicil of a prior will works a revocation of any intermediate will: Neff's Appeal, 48 Pa. 501. But does a codicil so republish a will, the contents of which are unknown and which is neither produced nor accounted for, so as to revoke intermediate wills which are produced?

Contestant relies upon the presumption that a later will, here later because republished, is a revocation of any earlier will (see Sigel's Estate (No. 1), 213 Pa. 14, 17; Mifflin's Estate, 49 Pa. Superior Ct. 605) and a contention that the codicil itself contains an implied revocation.

Contestant concedes that where a later revoking instrument is lost, the revocation is ineffective: Koehler's Estate, 316 Pa. 321; Harrison's Estate, 316 Pa. 15. However, contestant astutely argues that in this case the effective revoking instrument is actually the codicil of April 16, 1959, and that that document is in existence and has been proved to have been duly executed by decedent. The logical deduction following acceptance of this premise is that no problem of oral revocation is present and that the rule making a later revoking instrument ineffective when lost is inapplicable.

The court does not agree that the effective revoking instrument is actually the codicil of April 16, 1959. "A codicil is a testamentary writing which is a supplement to a will and which expressly or by necessary implication changes—i.e., alters, adds to or subtracts from—a prior will (or occasionally merely republishes it), but it does not purport to dispose of the entire estate or to contain the entire will of the testator, nor does it ordinarily expressly or by necessary implication revoke in *toto* a prior will": Crooks Estate, 388 Pa. 125. (Italics supplied.)

The present codicil can be considered an effective revoking instrument only if an assumption is made that it republishes a *will* executed in August of 1958. The court cannot find any implied revocation in the codicil standing by itself. If that assumption can be made, the presumption that a later will, here later because republished, revokes all earlier wills comes into play and the theory of contestants is applicable.

In that case, even if the supposed will of August 1958 was itself revoked after April 16, 1959, it would still revoke the March 12, 1959, will, which would not be revived: Wills Act of April 24, 1947, P. L. 89, sec. 6. A revocation is effective at the date of the instrument of revocation as opposed to the date of death: Ford's Estate, 301 Pa. 183. But the assumption is not warranted by the record. The weakness in the theory of contestant is found in the assumption that the testamentary writing of August 1958 is a will to which the presumption of revocation of all prior wills attaches. According to the testimony of Mr. and Mrs. Green, the contents of the testamentary writing of August 1958 were never witnessed. It is true that decedent said that the paper constituted his will, but there is certainly no other indication that decedent, in fact, executed a will. It is possible that the writing was not a complete disposition of decedent's property or was, in fact, no will at all, thus substantially weakening or completely destroying the presumption that later wills revoke earlier wills; it is possible that decedent wished to mislead the Greens about the writing in question; it is possible that Mr. and Mrs. Green are mistaken in their testimony. In any event, whether there was a will of August 1958 can only be established by the very slimmest of oral testimony and the reference in the codicil.

The reference in the codicil is not sufficient. It is possible that the reference was a mistake; although there is no direct evidence of this, it is possible that the reference is to a writing which was not a complete disposition of decedent's property, thus substantially weakening or completely destroying the presumption that later wills revoke earlier wills. Nor does the use of the word "Will" by decedent in the codicil supply the deficiency. The codicil is holographic and was written without any legal assistance. There is no assur-

ance that decedent understood the word "will" to mean a complete disposition of all his property.

The reason given for the rule making a later revoking instrument ineffective when lost is that to hold otherwise would amount to oral revocation: Shetter's Estate, 303 Pa. 193, 197; Bates' Estate, 286 Pa. 583. The Supreme Court in Shetter's Estate, p. 197, states: "It cannot be shown by oral testimony alone that a will has been revoked. A writing declaring its revocation must be produced, signed by the decedent, before an earlier will can be rendered nugatory."

Koehler's Estate, supra, and Harrison's Estate, supra, held that a will cannot be annulled by parol testimony of an unproduced written revocation; that revocation can be established only by a writing produced. The Supreme Court states in Harrison's Estate, supra, the reason for the holding:

"If production of the revoking writing is not necessary before revocation can be accomplished, all that would be required to overthrow an otherwise valid will would be to have two evil disposed persons testify that they had seen a writing signed by the deceased, it matters not how informal, of later date than the will, in which he declared that he revoked it."

This rule is not required by the Wills Act but is a sort of judge-made statute of frauds: Bregy Intestate, Wills and Estates Acts of 1947, p. 2358.

In the present case, the alleged will of August 1958 was never witnessed. Assuming decedent did some writing as Mr. and Mrs. Green testified, still no one is able to testify that they observed the product of that writing and that it was in the nature of a will which would revoke prior wills. The case is governed by Koehler's Estate and the rule that a revocation can be established only by a writing produced.

Since the will of March 12, 1959, is not revoked and has been properly probated, the codicil of April 16,

1959, cannot be engrafted on the earlier will and probated as part thereof in the absence of evidence from which an inference can be drawn that such codicil was intended by the testator to be associated with the earlier will: Baker's Estate, 244 Pa. 350. To find that testator intended the codicil to be associated with the will of March 12, 1959, requires an assumption of mistake in reference date on the part of testator. Such an assumption is not supported by any evidence in the present circumstances. The codicil of April 16, 1959, specifically states that it is a codicil to the "will of August, 1958." The case of O'Neill's Estate, 58 D. & C. 351, is distinguishable in that there no prior will was offered for probate in conjunction with the probated codicil.

The case of Knecht's Estate, 341 Pa. 292, 294, is not similar to the present circumstances. Knecht's Estate held that where testatrix said that she was executing a " 'Codicil to my last Will and Testament dated approximately ten years ago,' " she meant a will dated three years before even though there was another last will dated 13 years before. Knecht's Estate differs from the present case in that (1) testatrix herself was not sure of the exact date intended and so stated in her codicil, thus leaving it up to the court to determine the intended reference date, and (2) there was no evidence of any testamentary writing 10 years ago, and the court was forced to discover for itself the correct reference date.

The codicil cannot be capable of independent existence as a will for the reason that the instrument itself states that it is a codicil. Furthermore, its very nature verifies that fact. It is not a complete disposition of decedent's property but only a single provision.

And now, November 10, 1960, the appeal is dismissed insofar as the writing dated March 12, 1959,

is concerned. The appeal is sustained insofar as the writing dated April 16, 1959, is concerned, and the probate of this writing is set aside. The decree of probate is modified accordingly.