## Willing's Estate.

*Will—Codicil—Execution—Publication—Evidence.*

Testator having by his will devised a house and lot to a charity, subsequently wrote to his attorney as follows: "I would like to add a codicil to my will as follows: I leave the house and lot . . . . to E. (his housekeeper). Make it as strong as possible, as I wish her to have them. Will you have it done as soon as possible, and let me sign it at once." This letter was signed by the testator. At the time the letter was written testator made a copy of it and enclosed it in an envelope on which he indorsed the words "Copy of codicil to my will." The endorsement on the envelope was not signed by the decedent. The attorney never prepared the codicil, and refused to do so. E. testified that she saw the testator put away the copy of the letter in his desk, calling her attention to the compartment in which he placed it. That after the attorney's refusal to make the codicil, he said to E, "It does not make any difference, you have that paper and that is all right;" that she said to testator "put that away carefully, it may be good to me some day." To which he replied: "Yes, I will, that is all right." The testimony of E. was unsupported by that of any other witness. *Held*, that the letter to the attorney with the endorsement on the envelope and E.'s testimony were not sufficient taken together to establish a valid codicil.

Scott's Estate, 147 Pa. 89, and Harrison's Estate, 196 Pa. 576, distinguished.

Argued March 23, 1905. Appeal, No. 362, Jan. T., 1904, by the Rector and Church Wardens and Vestrymen of St. Mark's Church, from decree of O. C. Phila. Co., Jan. T., 1904, No. 74, sustaining appeal from register of wills in Estate of J. Sperry Willing. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Appeal from register of wills.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*George Wharton Pepper*, with him *Sharswood Brinton* and *George Tucker Bispham*, for appellant.—A will in Pennsylvania must be in writing, signed by the testator at the end thereof and proved by two witnesses : Scott's Est., 147 Pa. 89.

It is undoubtedly the law that; in order to make a writing constitute a valid will, it must appear that it was executed with testamentary intent ; that the testator meant the writing in question to be the evidence of such intent, and that a writing which only contemplates the doing of some future act in furtherance of the writer's testamentary wishes is clearly not such an instrument : Mathews v. Warner, 4 Vesey, 186 ; Coventry v. Williams, 3 Curtis, 787 ; Stein v. North, 3 Yeates, 324 ; Barnet's Appeal, 3 Rawle, 15 ; Murry v. Murry, 6 Watts, 353.

In the absence of specific evidence as to when they were written, it is reasonable to infer that the words, " copy of codicil to my will," were indorsed by the testator upon the envelope containing the signed copy of the letter at the time when he wrote the letter and kept the copy.

If written contemporaneously with the letter and copy, the meaning of the indorsed words is controlled by the fact that the testator actually sent the letter, and did not then treat it as anything but an instruction to his attorney.

If the indorsed words were written at a later date in an attempt to convert the nontestamentary letter into a codicil, then the writing of the words constituted the testamentary act, and as the indorsement is not signed no legal effect can be given to it : Wineland's App., 118 Pa. 37.

*Alex. Simpson, Jr.*, of *Simpson & Brown*, with him *Robert W. Archbald, Jr.*, and *Henry D. Paxson*, for appellee.—Where the evidence is not directly on the question of testamentary intent, is not relied on as itself supplying the evidence of that intent, and where the papers produced for probate disclose testamentary intent on their face (as in this case, the original letter taken in conjunction with the copy and the indorsement thereon), and all that is required is the clearing up of a possi-

ble ambiguity or the resolution of a doubt as to the true construction of the paper, the evidence of two witnesses is not required: Kisecker's Est., 190 Pa. 476.

Extraneous evidence is admissible to show that the testator intended this apparently incomplete instrument to be part of his last will and testament: Scott's Est., 147 Pa. 89 ; Harrison's Est., 196 Pa. 576 ; Kisecker's Est., 190 Pa. 476 ; Fosselman v. Elder, 98 Pa. 159.

Whatever seeming inconsistency there may be between the indorsement on the envelope and the contents thereof, it is no greater than the inconsistency in Scott's Estate, in which the extrinsic declarations of the testator prevailed over the wording of his writing. There are several other cases in which testamentary intent has been gathered by a court from a paper some parts of which are apparently deliberative : Whyte v. Pollok, L. R. 7 App. Cases, 400 ; Torre v. Castle, 1 Curt. 303 ; Bone v. Spear, 1 Phillim. 345 ; Barwick v. Mullings, 2 Hagg. Eccl. 225 ; Hattatt v. Hattatt, 4 Hagg. Eccl. 211.

OPINION BY MR. JUSTICE BROWN, May 15, 1905 :

On June 11, 1902, J. Sperry Willing executed his will, in which he devised a house and lot of ground, No. 1429 Spruce street, Philadelphia, to his executor, in trust, with direction that the same be sold and the proceeds applied to the benefit of St. Mark's Church. On June 17, 1903, he wrote his attorney, Ernest Zantzinger, Esq., a member of the Philadelphia bar, whom he had named as his executor, the following note :

"June 17th, 1903.

" DEAR ERNEST : I would like to add a codicil to my will as follows : I leave the house and lot 1429 Spruce St., also the contents of the house to Elizabeth Ely. Make it as strong as possible, as I wish her to have them. Will you have it done as soon as possible, and let me sign it at once.

"Yours truly,

" J. SPERRY WILLING."

The request contained in the note was never complied with by Mr. Zantzinger, and his reasons for not complying are immaterial in determining the question before us. On July 1, 1903, the testator went away for the summer and died at Platt Clove,

N. Y., on the sixteenth of the following month. At the time his will was offered for probate a copy of the note of June 17, 1903, addressed to Mr. Zantzinger and signed by the decedent, together with an envelope containing it, on which were indorsed the words in the handwriting of the decedent, "Copy of codicil to my will," was offered as a codicil to the will. The indorsement on the envelope was not signed by the decedent. The register refused to admit the documents to probate as a codicil for the reason that, standing alone, they were simply evidence of an intention to make a testamentary disposition of the house and lot different from that made in the will, but which had not been shown by proper extrinsic evidence to have been declared by the decedent to be a codicil to his will.

It was conceded below, and is admitted here, that the note to the attorney of the testator, requesting the preparation of a codicil, does not, standing alone, make it such an instrument. This is clearly so. But the contention of the appellee, sustained by the court below, is, that the testimony of Elizabeth Ely, the beneficiary named in the note, taken in connection with the indorsement on the envelope, is sufficient to make the note a valid testamentary document. Miss Ely testified that after the decedent had written the note to Mr. Zantzinger, he said he thought he would make a copy of it, in case something should happen; that he did so and then mailed the letter himself; that when he came back from mailing it he asked her to come over to his desk, and said, "I want you to see where I put it;" that he took the copy and put it into a little compartment and locked it; that after he had placed it there he said, "Well, that is done;" that after he received a letter from Mr. Zantzinger he went to see the latter, and on his return home said: "Mr. Zantzinger said I was not in any condition to change this, to make a change in my will," to which she replied, "That is absurd, why don't you go to some other lawyer;" that he answered, "I don't like to do that, I am afraid I would make Mr. Zantzinger angry," adding, "It does not make any difference, you have that paper, and that is all right;" that the night before he went to New York he said to her, "Will you come over to my desk?" that she went over; that they took the note out and read it, and she said to him, "Put that away carefully, it may be

good to me some day," to which he replied, " Yes, I will, that is all right;" that he put it away in his desk, where it was found by Mr. Zantzinger after his death.  The testimony of Miss Ely was unsupported by that of any other witness.

In Scott's Estate, 147 Pa. 89, cited by the court below, and relied upon by the appellee as authority for reversing the decree of the register, two witnesses—the statutory number—established not only the decedent's publication of the letter addressed to his attorney as his last will and testament, but his positive direction that it should be admitted to probate as such. In the letter addressed to his attorney he set forth his will, and, after signing the letter, had it formally witnessed by the person who had written it.  After getting out of bed and signing it he handed it to the subscribing witness, telling him to put it in his (witness's) box in the Fidelity Title and Trust Company, and that it was a good will—" as good a one as I want."  He further said that the document would be probated ; that it was his will.  Another witness testified that he said : " That is as good a will as can be drawn ; if anything happens to me, have that probated."   In passing upon what was regarded as the important question in the case, Chief Justice PAXSON said : "Was the paper sufficiently proved?   Not its execution, for that, as before observed, was proved by three witnesses, but the fact that the testator intended it as his will, and declared it to be such.   The law requires a will to be proved by two witnesses.   We have here two witnesses as to the fact of publication as a will."   That case, as decided under its facts, is not only not to be regarded as authority for appellee's contention here, but rather against it.

In Harrison's Estate, 196 Pa. 576, the other case relied on by the court below, the testatrix inclosed certain bonds in an envelope, on which there was the following indorsement signed by her: "June 21, 1897.  Six bonds for my brother John's three daughters, also one for my nephew John Beard, to be sold after my death."  In holding that the indorsement operated as a will we said : " This is another case of irregular execution of a testamentary paper which is always to be regretted, but as to which we have sanctioned many departures from the strict requirements of our statute of wills.  The one requirement

that every will shall be in writing and shall be signed by the maker at the end thereof, we have never surrendered and it is to be hoped we never will. . . . The paper is clearly testamentary, it is fully signed by the testatrix, it does not take effect till after her death because the bonds are to be sold after her death, and the persons who are to take the benefit of the legacy are named with absolute certainty. The fact that pecuniary legacies of a similar amount with the probable proceeds of the bonds, are given to the same legatees by the will, does not, under all the authorities, affect their right to take these proceeds as additional legacies, and the circumstance that they are called bonds when, as to the stock certificate, the description is not precisely accurate, cannot affect the right of the legatees. The person who wrote the indorsement on the envelope, was examined as a witness, and explained, very fully and with entire satisfaction, not only that the indorsement was written on the envelope at the instance of the testatrix, and that it was signed by her, but also that she herself with her own hands, selected the bonds and securities from other packages of similar papers contained in her private box, and herself placed them in the envelope."

The orphans' court was of the opinion, expressed through two of its learned judges, that the indorsement on the envelope in the handwriting of the deceased, " copy of codicil to my will," supplied the second witness and was stronger evidence of a declaration by him that the inclosure was really a codicil to his will than could be established by the testimony of any number of witnesses. It does not appear when the indorsement was made. It is to be presumed, in the absence of any evidence to the contrary, that it was made when the copy of the letter was placed in the envelope. If so, it can be regarded as nothing more than an ordinary indorsement put on the envelope before placing it in the safe that its contents might be readily ascertained whenever, with other papers, it would be handled by the testator. If the copy of the note was not in itself a codicil, as is conceded, surely the mere preservation of it by the decedent in the manner stated would not transform the instructions to the attorney to do something in the future for him into a completed testamentary act by himself. He had instructed the attorney to prepare the codicil as soon as possible, that

he might sign it, as the law required, to make it his testamentary act. If, on the other hand, the envelope was placed in the safe, with no indorsement on it at the time, containing but a copy of the instructions given to the attorney, and subsequently the indorsement was made as a publication by the decedent that the inclosed paper was a codicil to his will, the indorsement was ineffectual for such a purpose, for it was not signed by him. If he then intended it as his testamentary act, and returned the envelope with the indorsement upon it, it was no more his will than if he had, with his own hand, written on a separate piece of paper words devising the house and lot to his housekeeper and placed it in the safe without signing it. The indorsement was for one of two purposes—either to merely indicate the contents of the envelope as a matter of convenience or as an expression of testamentary intention; but such an expression of intention does not become an actual testamentary disposition of property until the testator signs his name to it "unless prevented by the extremity of his last sickness." The words of the statute are: The writing "shall be signed" by the person making the same, "or by some person in his presence and by his express direction," unless prevented for the reason stated.

This is not the case of an irregular execution of a will, and no one of our many cases sustaining testamentary instruments, which have been irregularly executed, has any application. The difference between them and this is the difference of no execution at all. That the decedent intended to devise the house and lot to the appellee is manifest from his note to his attorney, but he could give effect to that intention only in the way provided by the statute. The manner in which the right of testamentary disposition of one's property is to be exercised is for the legislature, and not for the courts; and though the intention of the decedent to give the house and lot to the appellee ought to be carried out, we are powerless to give it that effect because he failed to do so himself in the only way he could. So it has often happened, and so it will happen again, but it is better that, in the transmission of the estates of the dead to the living, such intentions now and then fail than to be without the written law regulating their valid expression. The decedent intended to act by signing a codicil which he asked his at-

torney to prepare; but it was not prepared by him, nor by any other, for no one else was asked to prepare it after Mr. Zantzinger refused to do so. The decedent died leaving, instead of an executed codicil, nothing but a copy of the instructions to his attorney to prepare it. With the statute before us, there can be no other view of the case.

The decree of the court below is reversed, and the decree of the register, refusing to admit the alleged codicil to probate, is affirmed, the costs on this appeal to be paid by the appellee.