# Brock's Estate.

*Wills—Revocation by mutilation—Republication.*

A will which has been revoked by mutilation may afterwards be republished, and where a jury have found that after tearing his signature from his will and after tearing off a portion of the codicil animo revocandi, testator pasted a piece of paper in the place of that torn off and rewrote his signature and the missing words of the codicil, the will and codicil were properly held to be republished and were properly admitted to probate.

Argued Oct. 14, 1914. Appeal, No. 107, Oct. T., 1914,

by Jane Brock DuBruille and Ida M. Brock, from decree of O. C. Allegheny Co., Feb. T., 1912, No. 274, dismissing appeal from decree of Register of Wills admitting to probate the will of Cyrus C. Brock, deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Appeal from decree of register of wills admitting to probate the will of Cyrus C. Brock, deceased. Before OVER, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the appeal. Jane Brock DuBruille and Ida M. Brock appealed.

*Error assigned,* among others, was the decree of the court.

*F. P. Iams,* with him *J. D. Iams,* for appellants.

*George H. Stengel,* for Commonwealth Trust Company, guardian of Brock DuBruille, appellee.

*James G. Hays,* for Gail Hare, appellee.

OPINION BY MR. JUSTICE ELKIN, January 2, 1915:

The testator was a lawyer and wrote his own will. The language is plain and unambiguous and the intention is clearly expressed. The original will is dated March 29, 1906, when it was formally executed in the presence of witnesses. After giving directions as to the removal of the remains of his wife and the erection of a monument, the testator made a small bequest to his granddaughter and devised a cemetery lot to his brother. The residue of his estate, which was practically all of it, he gave to his two daughters and a granddaughter share and share alike. In other words he directed a division of his estate into three equal parts and named the beneficiaries who were to take under his will. At a subse-

quent date, January 17, 1907, he added a codicil which provided that his grandson should share equally with the three legatees named in the original will. The effect of the codicil was to divide the residue of the estate into four equal shares instead of three. If the situation had remained as it then was no one could have seriously questioned the proper execution of the will and codicil. They were testamentary in character, were signed at the end thereof, and disposed of the entire estate in language too plain to be misunderstood. The present controversy grows out of what subsequently happened. During a visit to his daughter who lived in Oregon, the testator had a dispute with his granddaughter, a beneficiary under the will, and while angry as a result of that dispute, he tore his signature from the lower right hand corner of the paper upon which the will was written and in doing so mutilated the codicil which was written on the reverse side thereof. He did this in the presence of his granddaughter and others and then threw the will and that part of the paper which contained his signature upon the floor saying, "you have not only cut yourself out, but your little brother also." Very soon thereafter the testator picked up the will which he had thrown upon the floor and put it in his pocket. There is no evidence as to what became of the detached part of the will which contained his signature, but the mutilated will with such additions and corrections as he subsequently made to it remained in his possession from the time he put it in his pocket after tearing his signature therefrom until the date of his death when it was found among his papers. The will when found showed on its face that some one had very carefully and neatly attached to the original will another piece of paper of the exact size as that containing the signature of the testator which had been torn from it by him. This attached piece of paper was at the lower right hand corner of the original will and across it at the proper place was written the name of the testator. On the back of it was also

written the words of the first codicil which had been eliminated by tearing the signature from the first page of the original will. It will thus be seen that when the will was found among the papers of the testator at the time of his death it was a complete testamentary instrument with both will and codicil signed at the end thereof as required by the statute. If in point of fact the testator attached the piece of paper to the will with such great care, or caused it to be done, then rewrote his name at the end thereof, and followed this by rewriting with his own hand those words which had been eliminated from the first codicil, his intention to republish the provisions of the original will and first codicil which he had attempted in a spirit of pique or anger to destroy could not be made to appear more clearly. This was the view entertained by the Orphans' Court but the facts were in dispute, and hence it was that these questions were certified to the Court of Common Pleas for determination by a jury; the jury found that the signature on the attached piece of paper was in the handwriting of the testator as were also the words written on the reverse side thereof which supplied the words of the first codicil that had been torn therefrom when the testator tore his signature from the original will. The jury also found that the testator either attached the paper to the will or authorized some one to do it for him. In either event his intention would be the same. An inspection of the will shows that the name of the testator was signed after the paper was attached, and while this precise question was not certified for determination by the jury, it was found as a fact by the learned Orphans' Court, and in our opinion no other conclusion could be reached without doing violence to what is plain and obvious to any one who inspects the writing. With all of these facts found on ample evidence either by the jury or by the court, the intention of the testator regarding the disposition of his property is too manifest to admit of doubt. Under these findings of fact, there is presented for our consideration

upon review, a writing testamentary in character, signed at the end thereof by the testator, with his signature proved by more than two witnesses, and this is all the law requires in the execution of a will. We also agree with what the learned court below said as to the intention of the testator in republishing his first codicil and are of opinion that this codicil was properly admitted to probate.

The second so-called codicil was in the nature of a letter addressed by the testator to his brother, and as to the refusal to admit this paper to probate we concur in the views expressed by the learned Orphans' Court.

Decree affirmed.

Costs to be paid out of the estate.