## Koenig's Estate

*Charles S. Gilmer*, for appellant.

*Scott S. Leiby* and *Snyder, Miller, Hull & Hull*, contra.

Fox, J., December 17, 1934.—We have before us an appeal from the decision of the Register of Wills of Dauphin County, refusing to probate two papers and an envelope as the last will and testament of the decedent.

Exhibit no. 1 is paper no. 1, which is testamentary in character but unsigned, devises and bequeaths unto George R. Koenig, a nephew, decedent's estate, and names the said Koenig as the executor. This paper is dated March 3, 1934.

Paper no. 2, which is also unsigned and undated, bequeaths $4,000 to the decedent's sister, Maggie Staph, $1,000 to his niece, Kate Miller, and $500 to Maria Koenig.

Both these papers were enclosed in an envelope on the outside of which was printed "Last will and testament of", signed in writing immediately below with the name "Louis Koenig".

Testimony was taken relating to the handwriting contained in the said two papers and of the name written upon the envelope. It discloses inter alia that, after the death of the said Louis Koenig, the said George R. Koenig mentioned in paper no. 1 and his wife went to the box of the decedent, which was in the vault of Union Trust Company, and, having the key to the said box, unlocked it and took therefrom the sealed envelope, opened it, and found the said papers.

After considering the testimony, we are of the opinion that the writing on papers nos. 1 and 2 and on the outside of the envelope is that of the said decedent.

The question before us is, did the register err in refusing to probate these papers, nos. 1 and 2, and the envelope as the last will and testament of the said Louis Koenig, deceased?

The appellant contends that the papers and the envelope constitute a complete and valid will; that the signature of the said decedent on the outside of the envelope immediately under the words "last will and testament of" is at the end of the will.

Our Act of April 8, 1833, P. L. 249, sec. 6, provides: "Every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence, and by his express direction, and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses, otherwise such will shall be of no effect."

The Wills Act of June 7, 1917, P. L. 403, in section 2 contains the same language with the following proviso, viz: "Provided, That the presence of dispositive or testamentary words or directions, or the appointment of an executor, or the like, after the signature to a will, whether written before or after the execution thereof, shall not invalidate that which preceeds the signature."

In the case of Hays v. Harden, 6 Pa. 409, 413, Gibson, C. J., after giving an

historical sketch of the old law and commenting upon the Act of 1833, in the final paragraph of his opinion, said: "Signing at the end of a will was required by the statute to prevent the evasion of its provisions that followed the English statute of frauds, which the judges held to be satisfied wherever the testator's name, in his own handwriting, was found in the introductory or any other part of the instrument. Besides, as all the devises in a will constitute one instrument, signing at the end of it serves to show that the whole disposition of the testator's estate was finished and not in embryo, which the want of a formal act of authentication had before left room to doubt."

In Wineland's Appeal, 118 Pa. 37, 41, Mr. Justice Paxson, in writing the opinion of the court said:

"Our act of 1833 as well as the statute of Vict. are in part borrowed from the British statute of frauds, two sections of which have been so evaded by judicial construction as to be practically repealed. We do not propose that the act of 1833 shall meet with the same fate. The legislature have laid down a rule so plain that it cannot be evaded without a clear violation of its terms. No room is left for judicial construction or interpretation. It says a will must be signed at the end thereof, and that's the end of it."

The proviso above referred to in the Wills Act of 1917 was to prevent invalidation of the entire will, as occurred in Wineland's Appeal, supra. The doctrine laid down in this last-mentioned case has been frequently referred to and approved in later cases, viz: Harrison's Estate, 196 Pa. 576; Willing's Estate, 212 Pa. 136; Churchhill's Estate, 260 Pa. 94; Sieter's Estate, 265 Pa. 202; Maginn's Estate, 278 Pa. 89.

In each of these cases, there is quite a full discussion of this requirement, and in all of them the opinion is "that the courts have not surrendered this requirement and it is to be hoped that they never will." In the case last cited, the Supreme Court in its opinion written by Mr. Justice Kephart, inter alia, said at pages 96, 98, 99:

"While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end. And this end must not permit the substitution or interpolation of pages in advance unless they are connected as indicated. As stated in Stinson's Est., 228 Pa. 475, 479, 'The order of connection must manifestly appear upon the face of the will.' . . .

"While the practice of allowing the owner of property to dispose of it after death is of very ancient origin ( Genesis 48:22), it did not exist in certain nations (4 Kent 502), and, in England, until a more recent period, was exercised under considerable restriction: 2 Blackstone's Com. 492. It is not a constitutional or natural right, but a creature of statute law, and as such it must be governed: Kirkpatrick's Est., 275 Pa. 271; Frick's Estate, 277 Pa. 242. The state prescribes a form within which a testator's acts may be reasonably safe, but it must be followed.

"To sustain as a will this collection of papers not only opens the door to fraud of the most aggravated character, but strikes down every protection thrown about a decedent's estate. It would encourage heirs or persons evilly inclined to employ every available means to get possession of a will and (acting under our decision, if these papers are found as a will) proceed to adjust it to their satisfaction. As stated by Mr. Chief Justice Mitchell in Swire's Est., 225 Pa. 188, 191, 192, reviewing Heise v. Heise, 31 Pa. 246, and other cases, 'Nor should

we lose sight of the mischiefs which existed at the time when it [the statute] was enacted; mischiefs which it was designed to remedy. Among these, none was more serious than the facility with which unfinished papers, mere inchoate expressions of intention, were admitted to probate as valid wills of decedents. Letters, memoranda, mere notes unsigned, which were entirely consistent with a half formed purpose, and which may have been thrown aside, and never intended to be operative, were rescued from their abandonment, proven as wills, and allowed to prevail as dispositions of property which there was much reason to believe the decedent never intended. It was to remedy this mischief that the Act of 1833 provided that every will should be signed at the "end thereof", that thus, by his signature in that place, the testator should show that his testamentary purpose was consummated, and that the instrument was complete. . . . The purposes of the Act of 1833 were accuracy in the transmission of the testator's wishes, the authentication of the instrument transmitting them, the identification of the testator, and certainty as to his completed testamentary purpose.' The law is already quite loose with respect to writings evidencing wills. In sales of personal property, deeds, and other transactions, the law is very exacting. To now go to the extent urged by the appellee is to sweep away the last protection for wills."

The Orphans' Court of Philadelphia recently, in Maxwell's Estate, 18 D. & C. 111 (1932), on an appeal from the register of wills refusing to admit to probate several unsigned paper writings which were found enclosed in an envelope, endorsed:

"Codicil to
"Will of Jane Maxwell,
"Made January 1st, 1931 "718 Spruce St.,
 "Philadelphia,
 "Pa.;"

dismissed the exceptions and confirmed absolutely the decree of the presiding judge refusing to admit to probate the said unsigned writings as a codicil to the will of the decedent.

Notwithstanding our findings of fact that the three papers offered in evidence were in the handwriting of the decedent and were of testamentary character, yet the requirement of the act of assembly that they shall be signed at the sequential end thereof has not been complied with. Some departures from this doctrine may have been permitted. The most favorable case that we have found in support of the appellant's contention is that of Fosselman v. Elder, Executor, 98 Pa. 159. The facts disclosed, that after the death in January 1880 of one Elizabeth Fosselman who had made a will in July 1878, her executor found amongst her papers a sealed envelope endorsed: "Dear Bella, this is for you to open" and when opened by him it was found to contain the note in question for $2,000 and a paper containing these words: "Lewistown, Oct. 2d 1879.

"My wish is for you to draw this 2,000 dollars for your own use should I die sudden", and it was held that the endorsement on the envelope and the contents thereof constituted together a valid testamentary disposition of the note to the plaintiff in the issue, operating as a codicil to testatrix's will, and that therefore plaintiff was entitled to judgment. The distinction between that case and the instant one, however, is, that the paper enclosed in the sealed envelope was signed by the testatrix and that the matter referred to in the endorsement on the envelope was also referred to in the signed will.

In the instant case, paper no. 2 is not dated, it may have been written after the date of paper no. 1 which is much changed by paper no. 2. On the other

hand, it may have been written before paper no. 1. It would therefore be impossible to tell which paper should stand as the will. However, neither one is signed at the sequential end. If the contention of the appellant should be sustained and the signature of the deceased under the words quoted as printed on the outside of the envelope be regarded as the sequential end, it would open the door to fraud which the statute is intended to avoid.

We are of opinion that a departure from the requirements of our act is not favored and should not be permitted, and we say, as was said by Mr. Justice Paxson in his positive manner: "It says a will must be signed at the end thereof, and that's the end of it": Wineland's Appeal, supra.

The refusal by the register of wills to probate the said writings, viz, exhibits nos. 1, 2, and 3 as the last will and testament of the decedent is sustained, and the appeal is dismissed.