## Coyne Will.

Argued April 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Walter W. Harris,* of *O'Malley, Hill, Harris & Harris,* for appellant.

*William J. Fitzgerald,* with him *Edward J. Kelly,* of *Kelly, Fitzgerald & Kelly,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 22, 1944:

The question raised by this appeal is whether the writing probated as a will is signed "at the end thereof" as required by Section 2 of the Wills Act of June 7, 1917, P. L. 403, 20 PS, section 191.

The probated writing consists of a single sheet of paper contained in a wire-bound memorandum book of

nine pages. Written on the first page is what is obviously a laundry list; on the second page appear the words "my will" and other illegible words or marks; on the third page, in the handwriting of decedent, are the words which have been probated; on the succeeding five pages are what apparently are laundry lists with a blank page as the last sheet. All of the writing in the book is with lead pencil. An examination of the original document discloses that, except for the probated sheet on the third page, and the words and marks on the second, the other writing is probably not in decedent's own handwriting.

It is only with difficulty that the words probated as a will are decipherable. Line by line they read:

>Signed
>Francis
>J. Coyne

---

>My last will
>and and
>testomony
>is left to
>Eva and
>Genevieve
>Coyne

It thus appears that physically the signature of the decedent appears at the beginning, or the *top,* instead of at the *end* of the testamentary disposition. The hearing judge permitted testimony to be given that decedent, who was ill and confined to his bed, had first written the words in the last seven lines, on the lower two-thirds of the sheet, when he said he "hadn't room to sign his name" and thereupon wrote the words in the first three lines— "signed" and his signature—and drew a line thereunder.

It was error to have admitted this testimony or to have considered its effect. In *Brown Estate,* 347 Pa. 244, we decided that the Wills Act requires signing at the

end, and where the instrument shows that the dispositive words appear after the signature, the fact that the signature was written *after* the testamentary disposition was made may not be established by extrinsic proof. *Covington Estate,* 348 Pa. 1, made no change in this principle. It was decided under the facts of that case that a valid will had been written on separate, not physically united, sheets of paper, found in a sealed envelope, where only the last sheet was signed at the end.

We agree with the learned court below that the test as to whether or not a will is signed "at the end thereof" is not the physical point which is spatially farthest removed from the beginning. The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary purpose. See: *Stinson's Estate,* 228 Pa. 475, 77 A. 807; *Swire's Estate,* 225 Pa. 188, 73 A. 1110. As was said by Justice (later Chief Justice) KEPHART in *Maginn's Estate,* 278 Pa. 89, 96, 122 A. 264, "While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end." See *Brown Estate,* supra, *Covington Estate,* supra.

An examination of the present paper discloses the complete absence of the slightest connection, in their internal sense, of the last seven lines with the three lines appearing at the top of the paper. They are unconnected by logical and grammatical sequence, by their internal sense, or by coherence or adaptation of parts. We are unimpressed by the ingenious, but unsound, argument of the learned counsel for the appellees, that such connection is established by decedent's use of the word "signed" before his signature, thereby indicating that decedent intended to authenticate all that appeared *beneath* it.

334

It is perhaps unfortunate that decedent's testamentary intentions are frustrated. The strictness with which this section of the Wills Act must be enforced is a matter of legislative mandate. As we said in *Brown Estate*, supra (p. 246) : "The Wills Act requires signing at the end. The purpose of the Act was to remove all *possibility* of fraud. . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well established mandate of the legislature. Were we to do so, we might in future cases facilitate fraudulent or unauthorized alterations or additions to wills."

The decree of the court below is reversed, the appeal from the Register is sustained, and the record is remitted with direction to revoke the probate; costs to be paid by the appellees.