## Kretz Estate.

Argued January 11, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul N. Schaeffer,* with him *John W. Forry, Emma Forry Mullen,* and *Forry and Forry,* for appellants.

*John S. Speicher,* for appellees.

*Alvin A. Woerle,* with him *Ruth, Weidner, Woerle & Yoder,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 21, 1963:

This is an appeal from a decree of the Orphans' Court of Berks County, dismissing appellants' exceptions to an order of distribution.

Adolph H. Kretz died in December, 1950. By his will, duly probated, he devised his residuary estate to trustees for the benefit of his widow, Eleanor Kretz, for life, with a general power of appointment in her to dispose of the trust res by will. In default of appointment, he directed distribution under "the Intestate Laws."

Eleanor Kretz died June 9, 1961, leaving a five page holographic will dated December 22, 1954. On the last page of the will, below her signature, she had written:

> "Residuary of the Estate to
> go to Esther Fleming
> Kathryn Graeff
> Bobby Allen
> Bersk County Trust Company
> Exequatars"

No signature appeared following this writing on the page. The five pages were found in a white envelope on which Eleanor Kretz had written:

> "My Last Will
> December 22nd 1954
> Eleanor Kretz
> 1201—Perkiomen Ave
> Reading Pa
> Berks County Trust Company
> Exequatars"

In a larger, brown envelope, on which she had written "Eleanor Kretz—Will & Codicil," were found the white envelope and a separate sheet of paper. On the sheet of paper were written two holographic, signed codicils, dated September 24, 1960. Each was entitled "Codicil to my Will." The substance of these codicils dealt with the inscription of her tombstone[1] and the care of the cemetery plot, with a further direction to omit flowers but to give to the Heart Fund. Neither writing contained any reference to her will, to the writing below her signature on the last page, or to the power of appointment under her husband's will.

The five pages, the white envelope, and the codicils were admitted to probate. No appeal was taken. The trustee under the will of Adolph Kretz filed its account, in which it proposed distribution of the trust property to the three persons named by Eleanor Kretz below her signature on the last page of her will (Appellees). The heirs of Adolph Kretz (Appellants) filed exceptions to the proposed distribution, which exceptions were dismissed. This appeal followed.

It is the position of appellants that Eleanor Kretz failed to exercise the power given under her husband's will, in that neither her will nor the codicils contained an exercise of the power. They contend that the writing on the last page in which appellees are named is

---

[1] The instructions concerning the tombstone repeat a similar provision contained in her will which had been executed six years earlier.

not a valid testamentary disposition because it is not signed by Eleanor Kretz "at the end thereof" as mandated by Section 2 of the Wills Act,[2] and that this fatal defect is not remedied by her signature on the white envelope or on the codicils.

Appellees take the position that the failure of appellants to appeal from the probate of the will of Eleanor Kretz precludes them from asserting that there was no exercise of the power. With this we do not agree. Whether there was a legally effective exercise of the power—the basic controversy—is not a question determinable by probate of Eleanor Kretz's will, but is clearly a matter of distribution under the will of Adolph Kretz. Cf. *Monske Will,* 402 Pa. 610, 168 A. 2d 326 (1961); *Galli's Estate,* 250 Pa. 120, 95 Atl. 422 (1915); *Carson's Estate,* 241 Pa. 117, 88 Atl. 311 (1913).

Appellees advance two theories on which, they contend, the disputed paragraph may be considered a valid part of Eleanor Kretz's will: first, that the signature on the white envelope constitutes a signing at the "end" of the will in accordance with the Wills Act (even though it is not disputed that the paragraph was obviously written after she affixed her signature to the last page), and, second, that the codicils effect a republication (or publication) of the unsigned paragraph and, thereby make it a valid exercise of the power. We find neither theory to be meritorious.

Section 2 of the Wills Act of 1947 (which is substantially similar to provisions in the Act of 1833 and subsequent acts[3]) provides: *"Every will* ... shall be in writing and *shall be signed by the testator at the end thereof,* subject to the following rules and exceptions:

---

[2] Act of April 24, 1947, P. L. 89, 20 P.S. §180.2 (1950).

[3] Act of April 24, 1947, P. L. 89, 20 P.S. §180.2, Commissioner's Comment (1950).

"(1) Words following signature. The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature." (Emphasis supplied.)

Since the adoption by the Legislature of the statutory requirement that a will be signed "at the end thereof," "This Court has consistently resisted attempts to weaken or modify the rule. . . . Justice KEPHART (later Chief Justice) said in Maginn's Estate, 278 Pa. 89, 91, 122 A. 264: 'In interpreting the legislature's thought, courts have rigidly opposed any exception tending to weaken the basic principle underlying the law, the chief purpose of which is to see that the testator's wishes are observed. It is possible, in some cases, a "decedent may have thought he had made a will, but the statute says he had not. The question is not one of his thought in that respect, but what he actually did, or . . . failed to do . . . ." ' " *Baldwin Will,* 357 Pa. 432, 440, 55 A. 2d 263, 267 (1947). As early as *Wineland's Appeal,* 118 Pa. 37, 41, 12 Atl. 301, 302 (1888), Mr. Justice Paxson rather appropriately remarked: "It says a will must be signed at the end thereof, and that's the end of it." The end contemplated by the Act is not the point which is physically furthest from the beginning of the writing. As we said in *Kehr Will,* 373 Pa. 473, 479, 95 A. 2d 647 (1953) : " 'The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary purpose,' " or, as was said in *Coyne Will,* 349 Pa. 331, 333, 37 A. 2d 509 (1944) : " '. . . there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end.' " See, also, *Baldwin Will,* 357 Pa., supra.

The briefs of counsel cite no appellate decisions of our courts which construe a signature on an envelope

to be a signing at the end of the document inside, nor has our research uncovered any such cases. There are, however, two lower court cases on this point. *Koenig's Estate,* 22 Pa. D. & C. 275 (Orphans' Ct. Dauphin Co. 1934), held that the signature on an envelope signed "Last will and testament of Louis Koenig" did not constitute a signature at the end of the enclosed, unsigned document. In *Maxwell's Estate,* 18 Pa. D. & C. 111 (Orphans' Ct. Phila. Co. 1932), the court held that the writing on the envelope ". . . cannot be construed as the signing at the end of the testamentary dispositions required by the Wills Act. This is not a signing at all; it is only an endorsement."

Appellees rely on language of the Court in *Whitaker's Estate,* 219 Pa. 646, 69 Atl. 89 (1908), and *Willing's Estate,* 212 Pa. 136, 61 Atl. 812 (1905). Both are clearly distinguishable. In each, the writing on the envelope was not signed. It is obvious, therefore, that this Court, in those cases, was not called upon to, and did not, decide the question here presented.

Other jurisdictions have been called upon to decide the same basic question here to be resolved. An unsigned holographic will found in an envelope signed "My Last Will & Testament Anna Fink Baird Miller . . ." was held invalid by the Court of Appeals of Kentucky in *Miller's Executor v. Shannon,* 299 S.W. 2d 103 (1957). In doing so, that Court said that it ". . . does not lightly set aside a will and . . . gives a liberal construction to . . . [the statutory provision], providing that a signature must be 'at the end or close of the writing.'" Id. at 106. On substantially similar facts, identical results were reached in *Estate of Tyrrell,* 17 Ariz. 418, 153 Pac. 767 (1915); *Estate of Manchester,* 174 Cal. 417, 163 Pac. 358 (1917); *Succession of Fitzhugh,* 170 La. 122, 127 So. 386 (1930); and *Warwick v. Warwick,* 86 Va. 596, 10

S.E. 843 (1890). In the last three jurisdictions, the Courts concluded that the words and signatures on the respective envelopes were solely to identify the contents thereof.

In North Carolina, whose statute requires only that testator's signature appear *anywhere* on the will, not necessarily at the end, the opposite result was reached in *Alexander v. Johnston,* 171 N.C. 468, 88 S.E. 785 (1916), and subsequent cases. In reaching its decision, the North Carolina Court cited *Fosselman v. Elder,* 98 Pa. 159 (1881), which dealt with an envelope addressed to an individual (the envelope was unsigned). Inside the envelope was a signed testamentary document making a gift to "you." The envelope was construed together with the letter to constitute a valid disposition. The issue was merely one of identification of a beneficiary, not location of signature. This Court in *Fosselman* said that the natural order of reading should control and that the writing on the envelope should be read as a preface to the letter. On that reasoning, the material on the white envelope in the instant case should be read first as identifying its contents, not last as a signature.

We are convinced that the writing on the white envelope was intended to identify the document enclosed and to recite the date on which it was written, the name of the writer, her residence and the name of the executor, not to serve as a signature to a testamentary disposition of property. Whether Eleanor Kretz thought that what she was enclosing was a valid will, including a disposition of the trust estate, is immaterial. The endorsement cannot be construed, factually, logically or legally, under the Wills Act, to be her signature at the "end" of her will.

We now turn to the remaining issue—whether the codicils written by Eleanor Kretz gave validity to the unsigned paragraph.

While it is true that a codicil republishes a will, see *Crooks Estate,* 388 Pa. 125, 130 A. 2d 185 (1957); *Knecht's Estate,* 341 Pa. 292, 19 A. 2d 111 (1941); we are aware of no Pennsylvania authorities which hold that a codicil republishes (or publishes) matter which follows the signature or "end" of the will. The cases relied upon by appellees, among which were *Steiger Will,* 9 Fiduc. Rep. 147 (Orphans' Ct. Phila. Co. 1958) and *Brock's Estate,* 247 Pa. 365, 93 Atl. 487 (1915), do not support their position. In *Steiger,* a properly executed will was modified by a subsequent marriage. The codicils signed after the marriage had the legal effect of republishing the will. The will and codicil in *Brock's Estate,* once valid, were later invalidated by a tearing of the single sheet on which they were written. Both were held republished when testator again affixed his signature to the torn sheet. The subsequent modification of the *Steiger* will and the destruction of the will and codicil in the *Brock* case were not defects in the initial signing of the instruments. Each, therefore, was capable of republication by subsequent appropriate act of testator. Here, however, the defect was failure to sign a testamentary disposition "at the end thereof."

In the absence of any reference in the codicils to the unsigned paragraph, there is no republication (or publication) of that paragraph. An extrinsic writing may be incorporated into a will or codicil by reference, provided it is clearly identified in that document. See *Galli's Estate,* supra; *Baker's Appeal,* 107 Pa. 381 (1885); 6 Hunter, Penna. Orphans' Court Commonplace Book, Wills §1(n) (2d ed. 1959). This obviously was not done by Eleanor Kretz in her codicils.

Our review of the full record and consideration of all of appellees' contentions lead us to the conclusion that Eleanor Kretz did not exercise, by her will or codicils, the power of appointment under her husband's

will. The court below, therefore, erred in dismissing the exceptions to the schedule of distribution in the estate of Adolph H. Kretz.

The decree is reversed. Appellants to pay costs.

Mr. Justice MUSMANNO dissents.