## Glace Will.

92

Argued November 13, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert V. Moser*, for appellant.

*Harry V. Klein, Jr.*, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 7, 1964:

This is an appeal from the Decree of the Orphans' Court of Northumberland County which reversed the Decree of the Register of Wills which had admitted to probate the hereinafter quoted written instrument as the last Will of George H. Glace.

Glace died June 24, 1962, at the age of 74 years. On June 23, 1962, Charles E. Wray, an Alderman, came to the hospital where Glace was a patient, for the purpose of drawing Glace's Will. The alleged will was written on a printed legal form with blank spaces—consisting of a single printed sheet of paper 8½″ in width and 13″ in length. The handwritten parts were all written by an Alderman, Charles E. Wray, with the exception of the signature, "George Glace." The words "George Glace" were written by him on the front page after the word "I", and again in the testimonium clause after the words "IN WITNESS WHEREOF, I". The alleged will was signed at the end of the testimonium clause, "Chas. E. Wray" on the line intended for the signature of the testator, with a seal opposite; and the word "Alderman" was written by Wray underneath his own signature.

The instrument is short and is as follows:

"I, *George Glace,*\* of Sunbury, Pa., of the County of North'd and State of Pennsylvania, being of sound mind, memory and understanding do make and publish this my last will and testament, hereby revoking and making void all former wills by me at any time heretofore made.

"And first, I direct that my funeral be conducted in a manner corresponding with my estate and situation in life and that all my just debts and funeral expenses be fully paid and satisfied as soon as conveniently may be after my decease.

"And to such estate as it hath pleased God to intrust me with, I dispose of the same as follows, viz: all my belongings, Personal & Real Estate be [an illegible word] Divided between (my Daughter Mrs. Mapstone 101 Ind. St. Selinsgrove Pa.) and my (Lady

---

\* — written by Glace.

Friend, Lillian F. Harvey* 37 So. 6th St. Shamokin Pa.)

"Witness

"Robert B. Rice
"408 So 10th St Sunbury

"Manlin W. Glace
"929 Eidson Ave Sunbury

and on the reverse side of the printed paper:

"And I hereby nominate, constitute and appoint Mrs. Mapstone & Lillian F. Havery,* Executrix's of this, my last will and testament.

"In Witness Whereof, I, *George Glace*,** the Testa ment,*** have to this, my will, written on one sheet of paper, set my hand and seal, this 23rd day of June A. D., One Thousand, Nine Hundred and 1962.

"Chas. E. Wray          (Seal)
"Alderman.

"Signed, sealed, published and declared by the above-named George Glace as and for his last will and testament, in the presence of us, who have hereunto subscribed our names at his request as witnesses thereto, in the presence of the said Testa      , and of each other."

The lower Court held that this instrument was *not* the will of George Glace, since it did not comply with Section 2 of the Wills Act of April 24, 1947, P. L. 89, 20 P.S. §180.2. Section 2 pertinently provides, "Every will . . . shall be in writing and shall be signed by the testator *at the end thereof* . . ." The language of the Statute could not be clearer; to constitute a valid will, the writing must be signed by the testator *at the end*

---

* It will be noticed that Lillian's surname is spelled Harvey in the dispositive clause, and Havery in the appointment clause.

** — written by Glace.

*** "ment" was written by Wray.

*thereof*—any exceptions, modifications or "ifs ands or buts" would not only erode but would soon make the statutory requirement meaningless.

Glace's lady friend, Lillian F. Harvey, appeals, contending that (1) the writing was signed at the end because Glace's signature followed the dispositive clause, and (2) Glace's testamentary intention which is the polar star in the *construction* of every will, would be defeated if the instrument was not accepted as a valid will.

The law is well settled as to what is meant by the end of a will. In *Kretz Estate,* 410 Pa. 590, 189 A. 2d 239, the Court said, "Since the adoption by the Legislature of the statutory requirement that a will be signed 'at the end thereof,' 'This Court has consistently resisted attempts to weaken or modify the rule . . . . Justice KEPHART (later Chief Justice) said in Maginn's Estate, 278 Pa. 89, 91, 122 A. 264: "In interpreting the legislature's thought, courts have rigidly opposed any exception tending to weaken the basic principle underlying the law, the chief purpose of which is to see that the testator's wishes are observed. It is possible, in some cases, a 'decedent may have thought he had made a will, but the statute says he had not. The question is not one of his thought in that respect, but what he actually did, or . . . failed to do . . . .' " ' Baldwin Will, 357 Pa. 432, 440, 55 A. 2d 263, 267 (1947). As early as Wineland's Appeal, 118 Pa. 37, 41, 12 Atl. 301, 302 (1888), Mr. Justice PAXSON rather appropriately remarked: 'It says a will must be signed at the end thereof, and that's the end of it.' The end contemplated by the Act is not the point which is physically furthest from the beginning of the writing. As we said in Kehr Will, 373 Pa. 473, 479, 95 A. 2d 647 (1953) : ' "The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary purpose," ' or, as was said in

Coyne Will, 349 Pa. 331, 333, 37 A. 2d 509 (1944);
' ". . . there must be a sequence of pages or paragraphs
which relates to its logical and internal sense, and the
signature must be placed at the sequential end." ' See,
also, Baldwin Will, 357 Pa., supra."

Judge FORTNEY, in a very able opinion, held that
*Churchill's Estate,* 260 Pa. 94, 103 A. 533, controlled
this case. With this we agree. *Churchill's Estate* is
factually on all fours with the Glace instrument; in-
deed it is stronger for probate than the instant one.
In *Churchill's Estate,* the alleged will was written—
as was Glace's—by filling in blank spaces on a printed
form. Churchill wrote his name in three blank spaces
in the printed paper, first at the top, then in the tes-
timonium clause, and then in the attestation clause. He
did not sign his name at the end of the paper. The.
Court said, "It is apparent that in writing his name
in the three blank spaces in the form, decedent did not
intend his name as a signature. A writing in of a
name, in those circumstances, was not a signature and
did not constitute an execution of a Will in conformity
with the Wills Act. The place chosen by this decedent
to affix his signature was at the point where the ap-
pointment of his executors was consummated". *Church-
ill's Estate,* we repeat, governs the instant case. Our
conclusion is further supported by *Griffith Will,* 358
Pa. 474, 483, 57 A. 2d 893, and *Baldwin Will,* 357 Pa.
432, 436, 55 A. 2d 263, each of which reaffirmed
*Churchill's Estate.*

Appellant contends that we should consider and be
governed by the intention of the testator in our deter-
mination of this matter. Applicable is the succinct
maxim, "Hard cases make bad law"; it could be more
accurately expressed: "Heart-touching claims which
appeal to our sense of Justice often beget bad law."
*Coyne Will,* 349 Pa., supra, well answers appellant's
plea (page 334):

"It is perhaps unfortunate that decedent's testamentary intentions are frustrated. The strictness with which this section of the Wills Act must be enforced is a matter of legislative mandate. As we said in Brown Estate, supra [347 Pa.] (p. 246) : 'The Wills Act requires signing at the end. The purpose of the Act was to remove all *possibility* of fraud . . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well established mandate of the legislature. Were we to do so, we might in future cases facilitate fraudulent or unauthorized alterations or additions to wills.' "

The question in this case as to *whether decedent signed the writing at the end thereof* is not one of decedent's intention but of what decedent actually did or failed to do. We cannot add anything to the clear and convincing opinion in *Churchill's Estate,* supra.

Decree affirmed, each party to pay own costs.

Mr. Justice MUSMANNO dissents.