## Miller Will.

386

Argued March 20, 1964.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*David R. Tomb, Jr.,* with him *Milford L. McBride,
Jr.,* and *McBride and McBride,* for appellant.

*James M. Arensberg,* with him *Patterson, Craw-
ford, Arensberg & Dunn,* for University of Pittsburgh,
appellee.

*Henry C. Herchenroether, Jr.,* with him *Donald M.
Miller,* and *Miller, Buterbaugh & Cope,* and *Alter,
Wright & Barron,* for Pittsburgh Theological Seminary,
appellee.

OPINION BY MR. JUSTICE ROBERTS, May 11, 1964:

On the front side of a commercial, printed will
form, decedent, Clara Edna Miller, in her own hand-

writing, directed the payment of her debts and made several charitable bequests which apparently disposed of her entire estate. On the reverse side, an executor was appointed. Following these provisions, the will form contained a blank line for the signature of testatrix and the word "(SEAL)." Clara Edna Miller did not write her signature on this line. Immediately below it, in the printed attestation clause, she signed her name and completed the form as follows:

"Signed, sealed, published and declared by the above named Clara Edna Miller[1] as and for my[1] last Will and Testament, in the presence of us, who have hereunto subscribed our names at —— request as witnesses thereto in the presence of the said Testat— and of each other.

(s) Harry W. Akins

(s) Mary M. Akins"[2]

Decedent died on September 17, 1962, and this writing was admitted to probate by the Register of Wills of Indiana County. Wilma Power, an intestate heir, appealed to the Orphans' Court of Indiana County on the ground that decedent did not sign the instrument at the end thereof. The University of Pittsburgh and the Pittsburgh Theological Seminary of the United Presbyterian Church, beneficiaries under the writing, filed answers to the petition sur appeal.

The court below held: "It is the opinion of this Court . . . that this signature is written at the end of the will and that the document itself so indicates; that Clara Edna Miller meant it to be her signature and therefore we conclude that the Register of Wills acted

---

[1] In Clara Edna Miller's handwriting.

[2] "The subscribing witnesses testified before the Register of Wills at the time the instrument was offered for probate to the fact they saw the testatrix sign her will and that they witnessed her signature in the presence of each other as well as in the presence of the testatrix." (From the opinion of the court below.)

properly when he admitted this document to probate."
This appeal followed.

Section 2 of the Wills Act of 1947, April 24, P. L.
89, 20 P.S. §180.2, mandates: "Every will . . . shall be
in writing and shall be signed by the testator at the
end thereof . . . ." Recently, in *Kretz Estate*, 410 Pa.
590, 189 A. 2d 239 (1963), we again had occasion to
construe this provision of the Act. "The end contem-
plated by the Act is not the point which is physically
furthest from the beginning of the writing. As we said
in Kehr Will, 373 Pa. 473, 479, 95 A. 2d 647 (1953):
' "The end contemplated by the statute is the logical
end of the language used by decedent in expressing his
testamentary purpose," ' or, as was said in Coyne Will,
349 Pa. 331, 333, 37 A. 2d 509 (1944): ' ". . . there
must be a sequence of pages or paragraphs which re-
lates to its logical and internal sense, and the signa-
ture must be placed at the sequential end." ' ": *Kretz
Estate*, supra, at 595, 189 A. 2d at 242.

By these standards, the failure of decedent to sign
her name on the line provided in the printed form does
not, of itself, constitute a failure to comply with the
requirements of the Act.

Appellant relies upon *Churchill's Estate*, 260 Pa.
94, 103 Atl. 533 (1918).[3] In that case, as here, the
testator failed to sign on the printed line provided in
the commercial form. Testator wrote his own name in
the attestation clause and completed the blanks as fol-
lows:

"Signed, sealed, published, and declared by the
above named P. Churchill, as and for his last Will and
Testament, in the presence of us, who have hereunto

---

[3] Appellant also cites *Friese's Estate*, 336 Pa. 241, 9 A. 2d 401
(1939). However, that case is inapplicable. The case involved an
appeal from audit of the administrator's account, not from an
earlier decree which had denied probate. No appeal was ever taken
from that decree.

subscribed our names at his request as witnesses thereto in the presence of said Testate and of each other.

(s)  J. D. Spicher

(s)  John Rankin"

This Court concluded that P. Churchill was merely acting as his own scrivener and did not intend the writing of his name as his testamentary signature. P. Churchill's reference to himself in the third person, "his," lends added emphasis to that conclusion.

A problem somewhat similar to that posed by the present case was before this Court only recently in *Glace Will,* 413 Pa. 91, 196 A. 2d 297 (1964). There, the testator wrote his own name in the testimonium clause of a printed form, but the signature which followed on the line provided for testator's signature was that of the alderman who had prepared the document.[4] Unlike the case at bar, in that attestation clause, George Glace's name was written by this same alderman-scrivener, not by George Glace.

This Court held that "Churchill's Estate is factually on all fours with the Glace instrument," and that, as in *Churchill,* no testamentary signature of the testator appeared at the end of the writing. However, *Churchill* is factually distinguished from the instant case by Clara Edna Miller's use of the word "my" in the attestation clause rather than the word "his" used in *Churchill.* Therefore, *Churchill* does not control our disposition here. Moreover, in *Glace,* we held that there was nothing to indicate that the inserted signature was to serve as more than mere identification.

Here, decedent, in her own handwriting and words, recorded her testamentary desires and directions and then concluded the writing with her signature. The

---

[4] In the instant case, everything inserted in the printed form, with the exception of the signatures of the witnesses, was in the handwriting of Clara Edna Miller.

end contemplated by the Wills Act is not the point physically furthest from the beginning of the writing, *Kretz Estate,* supra, nor is it the particular point selected by the printer of the form. Rather, it is the place selected by the testator as the logical and sequential end of his dispositive act and at which he writes his testamentary signature. Examination of the entire instrument satisfies us that Clara Edna Miller's name in her own handwriting appears at the textual and factual end of her writing. The remaining inquiry is: Did she intend this as her testamentary signature or was she merely inserting her name for purposes of identification? On this record, we hold that the instrument, on its face, reveals that decedent did intend to affix and did affix her signature at the end of her testamentary disposition when she wrote her name into the attestation clause. Here, her use of the pronoun "my" manifested a present intention that her signature serve as her testamentary signature to the document she obviously regarded as her last will and testament.

Decree affirmed. Costs on the estate.

---

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I heartily concur in everything said in the excellent majority opinion and would add only that I am happy to note that this Court has decided not to be bound by what printers on arbitrary forms designate to be the end of the will, in accordance with the Wills Act. When one has expressed all he intends to say, whether it be in writing or in speech, his last words constitute the end of his expression, regardless of the extraneous interposition of printed matter which the speaker or writer does not accept. *End* means *End* and no kind of interpretation can change the significance of finality.

I rejoice in this pronouncement of the Majority and I take it that this decision will nullify previous pronouncements of this court which seem to have said, in certain cases, that *end* meant half-way, three-quarters of the way, or some other intermediate point.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Clara Edna Miller, the decedent, using a printed form of will, wrote her name and address at the beginning of the alleged will. Thereafter, likewise in her own handwriting, she directed the payment of her debts and funeral expenses, made certain bequests to a Church and two charities, and gave her residuary estate equally to the University of Pittsburgh School of Pharmacy and the Pittsburgh Xenia Theological Seminary. This writing was contained on the front page of the printed form. On the reverse side of this one page printed form, nothing was filled in until after the printed words "I do hereby make, constitute and appoint". At this point decedent filled in the name of "Dr. W. L. Benz". There then followed the printed words "to be Execut of this my last Will and Testament", in which decedent added the letters "or" after the word "Execut".

This is followed by blank spaces, printed language and writings hereinbelow shown:

"_____

_____

_____

IN WITNESS WHEREOF, I, ————————————,
the Testat above named, have hereunto subscribed my name and affixed my seal, the ——————— day of ——————— in the year of our Lord one thousand nine hundred ———————————————
————————————— (SEAL)

Signed, sealed, published and declared by the above

named Clara Edna Miller* as and for my* last Will and Testament, in the presence of us, who have hereunto subscribed our names at ———————— request as witnesses thereto in the presence of the said Testat— and of each other.

Harry W. Akins*
Mary M. Akins*"

The majority declare that this will was signed by testatrix *at the end thereof* as required by Section 2 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.2. Section 2 mandates: "Every will . . . shall be in writing and shall be signed by the testator *at the end thereof* . . . ."**

We had thought (1) that this language was clear beyond even the peradventure of a doubt, and (2) that the decided cases had made this missile-proof, and (3) that nothing short of an Act of the Legislature could change it. Apparently we were mistaken, since the majority, under the guise of carrying out the testatrix's imagined or apparent intention, (a) has obliterated or made meaningless Section 2 of the Wills Act and, under the guise of a distinction where no difference exists, (b) has overruled *Churchill's Estate,* 260 Pa. 94, 103 A. 533, and *Glace Will,* 413 Pa. 91, 196 A. 2d 297, and (c) repudiated the test of what constitutes "the end of a will" as iterated and reiterated in many prior decisions of this Court which rule and unquestionably control this case.

We shall first note the striking similarity of language in the *Churchill, Glace* and *Miller* wills and then review the pertinent language of prior decisions which lay down the pertinent law.

In *Glace Will,* 413 Pa., supra, all the arguments here made were there vigorously made and were re-

---

\* "Clara Edna Miller" and "my" are in the handwriting of decedent; "Harry W. Akins" and "Mary M. Akins" are in their respective handwriting.

\*\* Italics throughout, ours.

jected by this Court. In *Glace Will,* the alleged will was written on a *printed* legal form of *one sheet* with blank spaces exactly as was the Miller printed form. The handwritten parts were all written in by an alderman with the exception of the signature of the decedent, "George Glace". *George Glace wrote his own name* on the front page after the word "I," *and again in the testimonium clause after the words "In Witness Whereof, I"*. George Glace, in the aforesaid printed instrument, left directions for payment of his just debts and funeral expenses, and then disposed of his residuary estate, dividing it between his daughter and his lady friend whom he made one of his executrices. There then followed this clause:

"In Witness Whereof, *I, George Glace* [in his own handwriting] . . . have to this, my will, written on one sheet of paper, set my hand and seal, this 23rd day of June A.D., One Thousand, Nine Hundred and 1962.

"Chas. E. Wray

"Alderman."

This Court reversed the lower Court and held that the *Glace* will was *not* signed at the end thereof. The Court, after quoting Section 2 of the Wills Act, pertinently said (pages 94-97):

"The language of the Statute could not be clearer; to constitute a valid will, the writing must be signed *by the testator at the end thereof*—any exceptions, modifications or 'ifs ands or buts' would not only erode but would soon make the statutory requirement meaningless.

"Glace's lady friend, Lillian F. Harvey, appeals, contending that (1) the writing was signed at the end because Glace's signature followed the dispositive clause, and (2) Glace's testamentary intention which is the pole star in the *construction* of every will, would be defeated if the instrument was not accepted as a valid will.

"The law is well settled as to what is meant by the end of a will. In Kretz Estate, 410 Pa. 590, 189 A. 2d 239, the Court said: 'Since the adoption by the Legislature of the statutory requirement that a will be signed "at the end thereof," "This Court has consistently resisted attempts to weaken or modify the rule. . . . Justice KEPHART (later Chief Justice) said in Maginn's Estate, 278 Pa. 89, 91, 122 A. 264: 'In interpreting the legislature's thought, courts have rigidly opposed any exception tending to weaken the basic principle underlying the law, the chief purpose of which is to see that the testator's wishes are observed. It is possible, in some cases, a "decedent may have thought he had made a will, but the statute says he had not. The *question is not one of his thought in that respect, but what he actually did, or . . . failed to do . . . .*" ' ": Baldwin Will, 357 Pa. 432, 440, 55 A. 2d 263, 267 (1947). As early as Wineland's Appeal, 118 Pa. 37, 41, 12 Atl. 301, 302 (1888), Mr. Justice PAXSON rather appropriately remarked: *"It says a will must be signed at the end thereof, and that's the end of it."* The end contemplated by the Act is not the point which is physically furthest from the beginning of the writing. As we said in Kehr Will, 373 Pa. 473, 479, 95 A. 2d 647 (1953) : " 'The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary purpose,' " or, as was said in Coyne Will, 349 Pa. 331, 333, 37 A. 2d 509 (1944) : " '. . . and the signature must be placed at the sequential end.' " See, also, Baldwin Will, 357 Pa., supra.'

". . . Churchill's Estate, 260 Pa. 94, 103 A. 533, controlled this case. . . . Churchill's Estate is factually on all fours with the Glace instrument; [and with the Miller alleged will;] indeed it is stronger for probate than the instant one. In Churchill's Estate, the alleged will was written—as was Glace's [and Miller's] —by *filling in blank spaces on a printed form.* Church-

ill wrote his name in *three blank spaces* in the printed paper, *first at the top, then in the testimonium clause,* and *then in the attestation clause.* He did not sign his name at the end of the paper. The Court said, 'It is apparent that in writing his name in the three blank spaces in the form, decedent did not intend his name as a signature. A writing in of a name, in those circumstances, was not a signature and did not constitute an execution of a Will in conformity with the Wills Act. The place chosen by this decedent to affix his signature was at the point where the appointment of his executors was consummated'. Churchill's Estate, we repeat, governs the instant case. Our conclusion is further supported by Griffith Will, 358 Pa. 474, 483, 57 A. 2d 893, and Baldwin Will, 357 Pa. 432, 436, 55 A. 2d 263, each of which reaffirmed Churchill's Estate.

"Appellant contends that we should consider and be governed by the intention of the testator in our determination of this matter. Applicable is the succinct maxim, 'Hard cases make bad law'; . . . . Coyne Will, 349 Pa., supra, well answers appellant's plea (page 334) :

" 'It is perhaps unfortunate that decedent's testamentary intentions are frustrated. The strictness with which this section of the Wills Act must be enforced is a matter of legislative mandate. As we said in Brown Estate, supra [347 Pa.] (p. 246) : "The Wills Act requires signing at the end. The purpose of the Act was to remove all possibility of fraud . . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well established mandate of the legislature. Were we to do so, we might in future cases facilitate fraudulent or unauthorized alterations or additions to wills." '

"The question in this case as to *whether decedent signed the writing at the end thereof is not one of de-*

*cedent's intention but of what decedent actually did or failed to do."*

The majority opinion admits, as it must, that Clara Edna Miller's name appears at the "textual and factual end of her writing." Nothing could be more inaccurate! Her signature is concededly not at the physical end; it is not at the logical end in the light of its internal sense; and most important of all, it is *not at the sequential end*; on the contrary, it appears in the *middle of*—not even at the end of *the attestation clause.* In the light of the crystal clear Section 2 of the Wills Act, and of the hereinabove cited and quoted decisions of this Court, it is impossible for me to understand how anyone could hold or even imagine that decedent had signed her name at the logical and *sequential* end of her (alleged) will.

I very vigorously dissent.

Mr. Justice O'BRIEN joins in this Dissenting Opinion.